UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYNTHIA HERRICK, Individually and On
Behalf of All Others Similarly Situated,

                            Plaintiff,

      v.

SHUTTERSTOCK, INC.,

                        Defendant.

**CLASS ACTION COMPLAINT
FOR DAMAGES BASED ON
COPYRIGHT INFRINGEMENT**

**<u>JURY TRIAL DEMANDED</u>**

# <u>TABLE OF CONTENTS</u>

<b><u>Page(s)</u></b>

I.     INTRODUCTION AND OVERVIEW .......................................................... 1

II.    JURISDICTION AND VENUE ................................................................... 3

III.   THE PARTIES........................................................................................... 4

IV.   FACTUAL ALLEGATIONS ...................................................................... 5

      A.    The Importance of US Copyright and Bundle of Rights. ...................... 5

      B.    Copyright Infringement of Plaintiff's Work via Shutterstock ............... 6

      C.    Additional Factual Allegations Common to the Class.......................... 13

      D.    Shutterstock's Business Model, Knowledge of  Infringement
              and Retention of Ill-Gotten Gains........................................................ 14

V.     TOLLING OF THE STATUTE OF LIMITATIONS...................................... 22

VI.   CLASS ACTION ALLEGATIONS ........................................................... 22

VII.  CLAIMS FOR RELIEF ............................................................................ 26

      FIRST CLAIM FOR RELIEF
      Infringement of Copyrights (17 U.S.C. §§ 106, 501) ........................................ 26

      SECOND CLAIM FOR RELIEF
      Vicarious and/or Contributory Copyright Infringement ...................................... 28

      THIRD CLAIM FOR RELIEF
      Violations of Copyright Management Information (17 U.S.C. §§ 1202 & 1203) 30

VIII. PRAYER FOR RELIEF ........................................................................... 32

IX.   JURY TRIAL DEMANDED ...................................................................... 34

Plaintiff Cynthia Herrick, individually and on behalf of all others similarly situated, by and through her counsel, and upon personal knowledge as to facts known to Plaintiff, and as to all other facts upon information and belief following investigation of counsel, alleges as follows against Defendant Shutterstock, Inc. The investigation of Plaintiff's counsel into the factual allegations contained herein is continuing.  Many of the relevant facts are known only to the Defendant or are exclusively within its custody and control.  Plaintiff believes that substantial evidentiary support exists for the allegations set forth herein and that such evidence will be available after a reasonable opportunity for discovery.

## I.    INTRODUCTION AND OVERVIEW

1.    This is a federal class action alleging copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501 *et seq*. and violations of copyright management information ("CMI"), 17 U.S.C. § 1202 *et seq*. by one of the world's largest online stock photo agencies, Defendant Shutterstock, Inc. ("Shutterstock").

2.    Shutterstock received and continues to receive direct financial benefits from the unauthorized licensing of infringed works from its website to third-party unauthorized licensees, who each continue to distribute Plaintiff and the class's copyrighted works with false copyright management information.

3.    Plaintiff sues for money damages on behalf of herself and a class for the period from three years prior to the filing of this Complaint to the present (the "Class Period") consisting of all persons and entities owning copyrighted works who sent Shutterstock a takedown notice to stop Shutterstock from copying, publishing, distributing, displaying for licensing and licensing

those works to its customers and potential customers through third-party contributor accounts[1] without authorization from copyright holders, Plaintiff and class members.

4.     The claims asserted are brought to remedy violations of the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* (the "Act").

5.     Plaintiff and the class also seek relief for violations of CMI pursuant to 17 U.S.C. § 1202 *et seq.*

6.     Plaintiff and the class also seek equitable relief for copyright infringement, including an injunction prohibiting Shutterstock from engaging in the wrongful practices alleged herein, including requiring Shutterstock to void or terminate the "unauthorized licenses" it has granted to its customers from works owned by Plaintiff and the class.

7.     Plaintiff alleges that throughout the damages Class Period, Shutterstock has unlawfully generated revenue by acting as an agent and licensor of copyrighted works without the knowledge or permission of the copyright holders themselves. Some of Shutterstock's contributors use its platform to issue licenses to photos and videos for which the contributor does not own the copyright and has not been granted authorization from the copyright holder, an act which constitutes copyright infringement. However, while Shutterstock generally suspends additional unauthorized licensing of the copyrighted works upon receiving notification from a copyright owner of infringement, Shutterstock refuses to terminate the unauthorized licenses issued through its platform and retains its share of the ill-gotten licensing fees.

---

[1]     A contributor is generally a person or business that submits their copyrighted photographs, illustrations, music, videos clips, and images to Shutterstock which then actively performs services as a licensing agent for the contributor and offers for licensing and licenses the copyrighted work to third party customers. Shutterstock pays contributors 15-40% of the fee Shutterstock receives for licensing the contributor's works and Shutterstock retains the balance of the licensing fee, up to 85% of all revenue generated from each license sold.

8. Plaintiff is the victim of a Shutterstock contributor account holder that copied, uploaded her copyrighted works to the Shutterstock platform for licensing, and Shutterstock's intentional and knowing retention a direct financial benefit from the unauthorized licenses it sold of Plaintiff's copyrighted work to Shutterstock customer(s)/unauthorized licensees from the Shutterstock licensing platform.

9. As reported in its Form 10-K for the year ended December 31, 2022, filed with the SEC on February 14, 2023, over 645 million images and footage clips have been submitted to Shutterstock from over 2.3 million "approved contributors" that are being offered for license by Shutterstock, resulting in more than $827 million in annual revenue. These 645 million images and clips from Shutterstock's 2.3 million "approved contributors," are purportedly "vetted through [its] proprietary technology and by a specialized team of reviewers to ensure that it meets our standards of quality and licensability."

10. Plaintiff alleges that thousands of copyrighted works were licensed by Shutterstock through its contributors without authorization from Plaintiff and the class members, and all the revenue generated from those licenses was kept even after a takedown or cease-and-desist notice was sent by copyright holders.

11. Shutterstock has knowingly retained the ill-gotten gains from the infringement of works and has failed to void or terminate the unauthorized licenses with its customers/unauthorized licensees of the infringed works.

## II.    JURISDICTION AND VENUE

12. This is a civil action seeking damages and injunctive relief for copyright infringements under the Copyright Act, 17 U.S.C. § 101 *et seq*. and 17 U.S.C. §§ 501, 1202 *et seq*.

13.     This Court has original and exclusive subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

14.     This Court has personal jurisdiction over Defendant because Defendant availed itself of the privileges of conducting business in this District and in the State of New York and has obtained a direct benefit from such infringements.

15.     Venue is proper in this judicial district because Defendant (1) committed intentional acts (copyright infringement), (2) expressly aimed at the forum state of New York, (3) and caused harm that the Defendant knew would likely be suffered in the forum state.

16.     The claims alleged also arise out of or relate to Defendant's regular and systematic activities in this District and the fact that Plaintiff and the class would not have been injured but for Defendant's conduct directed toward her and the class in the District.

17.     Venue is also proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant may be found in this District and Shutterstock maintains its principal place of business in this District at 350 Fifth Avenue, 20th Floor, New York, New York 10118.

### III.     THE PARTIES

18.     Plaintiff Cynthia Herrick ("Herrick") is a resident of Maryland.  She is the owner of copyrighted works that were distributed, displayed and licensed by Shutterstock to its customers without her authorization and from which conduct Shutterstock obtained a direct financial benefit from those unauthorized licenses.

19.     Defendant Shutterstock, Inc. ("Shutterstock") is a Delaware corporation with its principal place of business at 350 Fifth Avenue, 20th Floor, New York, New York 10118.

20.     The unlawful acts alleged against the Defendant in this complaint were authorized, ordered, approved, or performed by Defendant's respective officers, agents, employees, or representatives, while actively engaged in the management, direction, and/or control of Defendant's businesses or affairs or were done in the routine and normal course and scope of employment of the Defendant's officers, directors, principals, executives, management, agents, servants, or employees.

## IV.     FACTUAL ALLEGATIONS

### A.     The Importance of US Copyright and Bundle of Rights.

21.     Copyrights are the legal title to intellectual property by which creators of original works such as photos and videos protect their exclusive moral and economic rights to those works.

22.     Respecting and defending the financial value and rights of creators' copyrighted works is a bedrock of U.S. democracy, considered so important that the Founders enshrined the U.S. Constitution with specific references to copyrights, and which expressly gave Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  U.S. Const. Article I, Section 8.

23.     The importance of copyright enforcement is not limited to this country.  Dating back to the early 1500s, French courts recognized that only the creators of works, or their assigned heirs, should have the right to publish those works.

24.     In 1886, more than 10 countries signed the Berne Convention for the Protection of Literary and Artistic Works, whose stated purpose is the "protection of the rights of authors in their literary and artistic works."

25.     The Berne Convention ensures authors are afforded the same protections in those signatory countries as they would enjoy within their own country, thereby promoting the worldwide distribution of creative works, while at the same time ensuring that the rights of the author of a work created in one country will not be circumvented through the infringement of those rights in another country.

26.     As of the date of this Complaint, as many as 179 countries, including the United States have signed the Berne Convention.

27.     Section 106 of the Act grants copyright owners the exclusive economic rights and control for the value of their works.

28.     The Act makes it illegal to reproduce, create derivative works from, distribute, publicly perform, grant licenses, or publicly display copyrighted work except in limited instances, and provides for damages if any of these rights are infringed.

29.     The Act was amended in 1976 to give content creators such as Plaintiff and members of the class an automatic copyright of their works.

30.     To file suit based on an alleged infringement, that automatic copyright interest must be registered with the U.S. Copyright Office under 17 U.S.C. § 411(a).

31.     Allegations of CMI violations do not require a copyright registration before filing suit because claims under the Digital Millennium Copyright Act are not copyright infringement claims and are separate and distinct.

**B.  Copyright Infringement of Plaintiff's Work Via Shutterstock.**

32.     Plaintiff is a wildlife photographer whose copyrighted works were displayed and licensed by Shutterstock to its customers without her permission and from which Shutterstock generated licensing fee revenue.

33.     In January of 2022, Herrick discovered her photo of a newly hatched Snowy Plover bird, titled, "Snowy Plover Baby's First Step," bearing U.S. Copyright Registration Number VA 2-291-805, being displayed and offered for licensing on Shutterstock.com by a contributor account under the user named "MTKhaledMahmud." This contributor account falsely claimed copyright ownership of the photo. The red arrow indicates Plaintiff Herrick's photo of a mother bird and baby bird.



34.     On January 24, 2022, Herrick emailed "infringementclaims@shutterstock.com" to notify Shutterstock of MTKhaledMahmud's infringing activity involving Snowy Plover Baby's First Step, which Shutterstock had assigned to the uploaded photo under the ID: 1726619095.

35.     Herrick sent a follow up email to Shutterstock that same day with screenshots of the unauthorized use, the original raw photo file with metadata showing information such as the date, time, camera, body, lens, and settings that were used to capture the image.

36.     Herrick also demanded that Shutterstock compensate her with all profits from the licensing of her photo.

37.     Herrick also noted that from its location on MTKhaledMahmud's account, Shutterstock boasted that image ID: 1726619095 enjoyed a Shutterstock designation of "**High Usage**," which evidences that Shutterstock had successfully sold numerous licenses for the photo, Snowy Plover Baby's First Step.

38.     An Internet search for the photo cross-referenced with Shutterstock ID: 1726619095 reveals the photo was licensed by Shutterstock for publication to CRC Press, an American offshoot of storied academic publisher, Routledge, and published in a textbook titled, *Human-Wildlife Interactions: From Conflict to Coexistence*.[2]

39.     Screenshots below show the book cover, the copyright page, and page in the book where the Snowy Plover's Baby's First Step Photo is displayed with false CMI credit to MTKhaledMahmud and Shutterstock.

---

[2] https://www.routledge.com/Human-Wildlife-Interactions-From-Conflict-to-Coexistence/Conover-Conover/p/book/9781032134499#:~:text=This%20second%20edition%20of%20Human,wildlife%20professor%20and%20scientist%2C%20Dr.  (last checked April 17, 2023)



# Human-Wildlife Interactions

## From Conflict to Coexistence

SECOND EDITION

Michael R. Conover
Denise O. Conover

CRC Press
Taylor & Francis Group

Second edition published 2022
by CRC Press
6000 Broken Sound Parkway NW, Suite 300, Boca Raton, FL 33487–2742

and by CRC Press
2 Park Square, Milton Park, Abingdon, Oxon, OX14 4RN

© 2022 Taylor & Francis Group, LLC

First edition published by CRC Press 2001

CRC Press is an imprint of Taylor & Francis Group, LLC

Reasonable efforts have been made to publish reliable data and information, but the authors and publisher cannot assume responsibility for the validity of all materials or the consequences of their use. The authors and publishers have attempted to trace the copyright holders of all material reproduced in this publication and apologize to copyright holders of permission to publish in this form has not been obtained. If any copyright material has not been acknowledged please write and let us know so we may rectify in any future reprint.

Except as permitted under U.S. Copyright Law, no part of this book may be reprinted, reproduced, transmitted, or utilised in any form by any electronic, mechanical, or other means, now known or hereafter invented, including photocopying, microfilming, and recording, or in any information storage or retrieval system, without written permission from the publishers.

For permission to photocopy or use material electronically from this work, access www.copyright.com or contact the Copyright Clearance Center, Inc. (CCC), 222 Rosewood Drive, Danvers, MA 01923, 978–750–8400. For works that are not available on CCC please contact mpkbookspermissions@tandf.co.uk

Trademark notice: Product or corporate names may be trademarks or registered trademarks and are used only for identification and explanation without intent to infringe.

ISBN: 978-1-138-39400-4 (hbk)
ISBN: 978-1-032-13469-9 (pbk)
ISBN: 978-0-429-40140-4 (ebk)

DOI: 10.1201/9780429401404

Typeset in Times LT Std
by Apex CoVantage, LLC





FIGURE 7.7  Nesting California least tern (a) and snowy plover with chick (b).

Source: Tern photo by Richard Fitzer, Shutterstock 13792759 and plover photo by MTKhaled mahmud, Shutterstock 1726619095.

Other applications of DBA, however, have been more successful. Nielsen et al. (2015) used conditioned food aversion to teach South American gray foxes not to consume toxic baits intended for other predators in Patagonia. This method has the potential to reduce mortality of nontarget predators. Woodchucks generalized an aversion from treated to untreated tomatoes (Swihart and Conover 1991), and livestock learned not to graze certain plant species after eating the same plant earlier and getting sick (Burritt and Provenza 1989, 1990; Lane et al. 1990). O'Donnell et al. (2010) demonstrated that an endangered species, the

40.     Despite Plaintiff's demand, Shutterstock failed to provide her with an accounting or compensate her with all profits from unauthorized licensing fees it received from the Snowy Plover Baby's First Step photo.

41.     Despite being on notice of Plaintiff's takedown notice for more than one year, Shutterstock failed to terminate or void the license with CRC Press, the book publisher that obtained the unauthorized license from Shutterstock of the Snowy Plover's Baby's First Step Photo.

42.     As the date of the date of this filing, CRC Press continues to sell the book (both digital and hard copy formats) that displays Plaintiff's Snowy Plover's Baby's First Step Photo. The book is available for purchase via online retailers such as Amazon for $181.84 per copy.[3]

43.     Despite Shutterstock being on actual notice of Plaintiff's copyright in her Snowy Plover Baby's First Step photo, Shutterstock's unauthorized licensee, CRC Press, continues to sell books with Plaintiff's Snowy Plover's Baby's First Step Photo that contains false copyright management information crediting MTKhaledMahmud and Shutterstock in the gutter of the photo.  Shutterstock has knowingly and with the intent to induce, enable, facilitate, and/or conceal infringement of Snowy Plover Baby's First Step photo allowed CRC Press (through the unauthorized license) to distribute and publish copyright management information that is false. This harms Plaintiff's economic value in her photo.

44.     Despite actual knowledge of Plaintiff's copyright in her Snowy Plover Baby's First Step photo, Shutterstock has contributed to the continuing distribution of copies of works knowing that copyright management information (Plaintiff's name) has been removed (and replaced with MTKhaledMahmud and Shutterstock) without authority of the copyright owner or

---

[3] https://www.amazon.com/Human-Wildlife-Interactions-Cooperation-Michael-Conover/dp/1032134496 (last visited on April 17, 2023).

the law, <u>and</u> knowing, or, with respect to civil remedies under section 17 U.S. Code § 1203, having reasonable grounds to know, that this conduct will continue to induce, enable, facilitate, and/or conceal an infringement of Plaintiff's copyright in her photo.

45.     Shutterstock never terminated any of the unauthorized licenses it granted to its licensee/customers.

46.     Despite being put on actual notice of copyright infringement from Plaintiff and members of the class, Shutterstock, with knowledge, has continued to induce, enable, facilitate, or conceal an infringement with false copyright management information with each of its unauthorized licensees, including credit for each work to Shutterstock.

47.     Each time Shutterstock issued licenses to its licensee/customer, Shutterstock retained a majority of the licensing fees from the unauthorized licenses as a direct benefit from the infringing activity despite actual knowledge and being on notice of infringement.

48.     Shutterstock also refused Plaintiff's request to share any additional information about other "unauthorized licenses," the names of licensees, or the amount of fees generated from the Snowy Plover Baby's First Step Photo.

49.     Shortly thereafter, Plaintiff discovered another of her photos had been infringed by Shutterstock.  The photo is titled "Snowy Flowy Egret" and bearing U.S. Copyright Registration Number VAu 1-461-254.

50.    This Snowy Flowy Egret photo had also been uploaded to the same Shutterstock contributor account, "MTKhaledMahmud."   A red arrow indicates Plaintiff's photo of Snowy Flowy Egret.  Plaintiff does not know whether this photo generated unauthorized licensing fees for Shutterstock.  Only Shutterstock does.



51.    Plaintiff alleges Shutterstock has received a direct financial benefit from at least one, and perhaps two, infringed copyrighted photos owned by Plaintiff and Shutterstock retained as much as 85% of all licensing fees generated by her work, and also unlawfully stored and displayed Plaintiff's photos on its website for license.

52.    Notwithstanding its actual knowledge of an infringement of Plaintiff's copyrighted Snowy Plover Baby's First Step Photo, Shutterstock nevertheless retained the profits from the infringing conduct and is therefore liable for damages.

53.     Plaintiff's experience with Shutterstock is similar to that of all class members that suffered damages from copyright infringement as a result of their copyrighted works being licensed by Shutterstock without authorization.  Despite being notified by Plaintiff and each copyright holder about the infringing activity, Shutterstock has nevertheless received direct financial benefits from infringing activity and refused to turnover and compensate copyright holders with the ill-gotten gains and refused to terminate any of the unauthorized licenses Shutterstock sold to its customers (who are all innocent infringers).

## C.     Additional Factual Allegations Common to the Class

54.     Plaintiff and each class member discovered that Shutterstock, through one its contributor accounts, had been displaying, soliciting offers to license, and actually licensing their copyrighted works for licensing fees.

55.     Plaintiff and each class member notified Shutterstock, the administrator of its own licensing website and unauthorized licensor of the Plaintiff and class members' works, of the infringing activity of their copyrighted works (a "takedown notice").

56.     Because Shutterstock operates its website as a licensing agency by handling, selecting, supervising, approving, modifying, and/or editing every work (including all licensing activity and payments), Shutterstock does not qualify as an online service provider.

57.     Plaintiff alleges that despite Shutterstock having actual notice of infringing activity from the takedown notices, Shutterstock nevertheless improperly retained revenue generated from the unauthorized licensing of Plaintiff's copyrighted works and those of the class, thereby receiving a direct financial benefit for licensing work that Shutterstock has admitted it vets and handles before it licenses those works to its customers.

58.    Despite receiving takedown notices, Shutterstock retains the ill-gotten gains from infringed works.

59.    Despite receiving takedowns notices, Shutterstock continues to allow and permit unauthorized licensees of copyrighted works to publish and distribute false copyrighted management information through its unauthorized licensees.

**D.    Shutterstock's Business Model, Knowledge of Infringement and Retention of Ill-Gotten Gains**

60.    Shutterstock is a licensing company that markets and sells, via its online archive and through approved contributors, photography and video licenses from subscription packages or individual licenses.

61.    These licenses and subscription packages permit its paying customers to use and exploit Shutterstock's curated collection of photography.

62.    Shutterstock's clients and licensees typically pay a monthly rate (currently ranging from at least $29.00 to $479.00) to license all of Shutterstock's photography, or an annual per-photograph rate (currently ranging from $29.00 to $229.00) to access, download, copy, and exploit Shutterstock's photography portfolio.

63.    Shutterstock's portfolio is heavily curated, and the breadth and quality of Shutterstock's content offerings are critical to its success as a publicly traded company.

64.    Shutterstock advertises that unlike the significant majority of "free" images available online, Shutterstock's rigorous vetting process enables it to provide confidence and indemnification to its customer/licensees that the images it licenses from its library have been appropriately licensed from copyright holders for commercial or editorial use.

65.     Shutterstock seeks to license high-quality content and licenses that content to customers worldwide both through its own collection of owned works and through approved contributors.

66.     Shutterstock's contributors "upload and submit photos for licensing by Shutterstock and which undergo an extension "content review process.""[4]

67.     Shutterstock boasts, "Our collection of content is provided by a community of contributors from around the world and is vetted through our proprietary technology and by a specialized team of reviewers to ensure that it meets our standards of quality and licensability. Whether photographers, videographers, illustrators, designers or musicians, our community of more than **2.0 million** approved contributors as of December 31, 2021 ranges from part-time enthusiasts to full-time professionals."[5]

68.     Shutterstock uses "proprietary computer vision technology along with a trained team of reviewers to complete a comprehensive evaluation of all content [contributor] submissions.  Our content review process is highly efficient, and our content review team generally evaluates and processes images and footage within 24 hours of submission to make them available for license on our sites, while working to continually improve our process to reduce review time." *Id*.

69.     Shutterstock admits, "We evaluate submissions based on certain technical and legal criteria to ensure we maintain the quality and integrity of our content library, including whether applicable releases have been obtained, ***whether third-party intellectual property is excluded***, and seeking to minimize other technical concerns such as excess noise or focus issues.  As of December

---

[4]  See https://investor.shutterstock.com/static-files/cfe3637b-a153-47c7-9ba7-4fe7f03d5bc0

[5]  See https://investor.shutterstock.com/static-files/9e2d2604-6e02-43e3-a57c-9bf992b970ea at 7.

31, 2021, over **625 million images** and footage clips have been submitted from verified contributor accounts." *Id.* at 8 (emphases added).

70.    Virtually all of Shutterstock's photographs and videos are sourced from a pre-approved network of verified contributors, who are often recruited by Shutterstock.

71.    Shutterstock exclusively reviews and approves its contributors' credentials before allowing them to contribute photography and videos to be considered for inclusion in Shutterstock's portfolio.

72.    Shutterstock does not make any photographs and videos publicly viewable or licensable unless and until it first reviews and approves the photographs and videos.

73.    Shutterstock uses its discretion to scrutinize the work's subject matter, commercial appeal, and technical quality before deciding whether to approve the work and add it to its licensing portfolio.

74.    Shutterstock asserts that it employs a "specialized team of reviewers" to ensure that a contributor meets its "robust quality standards" and a photograph and video meets its "standards of quality and licensability" before it is made available on Shutterstock's site and offered for license.

75.    Shutterstock's extensive review may also involve additional assessment by Shutterstock's review coordinators, who oversee reviewers and provide second opinions.

76.    Shutterstock reviews the metadata associated with its contributors' submissions.

77.    After Shutterstock approves a photograph and video, Shutterstock creates a dedicated "Asset Detail Page" that it makes public at a unique URL to provide details about the work and how it can be licensed.

78.    Shutterstock represents to its customers and licensees that it owns the right to

display and license the photography and video on its site.

79.     Shutterstock contracts directly with its clients and sets specific license terms such as duration, geographic region, and whether an image can be used on merchandise.

80.     Shutterstock is the principal licensor in licenses with its clients and is the only party with control over works before the works are delivered to clients.

81.     Shutterstock also controls under what circumstances a license can be terminated or voided.

82.     Shutterstock's review process is designed to ensure that every work is appropriately licensed for its intended use which can be "commercial" or "editorial."

83.     Shutterstock admittedly handles, selects, supervises, approves, modifies, and/or edits every image or video clip before allowing the work to be displayed for licensing ("Each image is individually examined by our team of trained reviewers to meet our high standards of quality and commercial viability.  This review process is designed to minimize the legal risk to our users from inappropriately licensed imagery.")[6]

84.     Shutterstock is solely responsible for handling each copyrighted work that is uploaded by its contributors.

85.     Shutterstock is a photo licensing agency that operates online, substantially similar to Getty Images, Adobe Stock Images, Depositphotos, iStock, Dreamstime, Stocksy, Westend61 and Cavan Images.  Defendant is not a "service provider" under 17 USC 512[7] as its activities related to licensing works from contributor accounts to licensees are neither passive nor incidental

---

[6]   https://www.sec.gov/Archives/edgar/data/1549346/000104746912005905/a2209364zs-1.htm

[7]   The term "service provider" means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received."  See 17 USC 512(k)(1).

nor merely the transmission, routing, or providing of connections for digital online communications. Shutterstock is much more than a passive network for licensing.

86.     The only actions taken by contributors are uploading works to their Shutterstock account and removing works from their Shutterstock account.  Shutterstock handles the rest.

87.     Shutterstock markets the works from contributors on its website and designates certain works as "high usage" to attract potential licensees.

88.     Shutterstock handles all the payment of licensing fees paid by its customers/licensees, not the contributors.

89.     If a potential licensee seeks to obtain a "Premier license" (rights-managed (versus royalty-free) that often comes with exclusivity rights or for commercial use), the potential licensee must contact Shutterstock and negotiate a licensing fee with a Shutterstock employee or agent.[8]

90.     Plaintiff had her copyrighted works wrongly uploaded by one or more contributors that did not have authorization to copy, display, distribute, or license any of her works.

91.     Likewise, Shutterstock did not have authorization to copy, display, distribute and license any of Plaintiff's works and any "authority" granted by the contributor to license the works was illusory, impermissible and void.

92.     Shutterstock copied, displayed, distributed and licensed Plaintiff's and the class members' works and therefore caused damages to Plaintiff from the infringing conduct that Shutterstock directly benefited from.

93.     Shutterstock reviewed Plaintiff's and the class members' works for metadata, quality, subject matter, aesthetics, and the numerous other factors described above. After

---

[8] See https://support.shutterstock.com/s/article/what-is-shutterstocks-premier-license?language=en_US   ("The easiest way to set up to attain a Premier license is by contacting our customer service representatives. Whether you prefer to converse over the phone or through an email conversation, we have customer support agents standing by who are ready to assist.")

completing its review of the content and commercial appeal of the infringing copies of Plaintiff and the class members' works, Shutterstock expressly approved the infringing copies of those works for inclusion in its licensing portfolio.

94.     Shutterstock made its own copies of the infringing copies of Plaintiff's and the class members' works, added its logo to the copies to claim them as its own intellectual property, published these copies on its public website at its Asset Detail Pages and other URLs, and began offering them to its customers in high-resolution as part of its licensing and subscription programs.

95.     In doing so, Shutterstock displayed the infringing copies of Plaintiff and the class members' works – which are likely virtually identical to the subject works aside from minor cropping, rotation or lighting adjustments – in multiple sizes on various URLS on its public website.

96.     Shutterstock then licensed the infringing copies of Plaintiff's and class members' works to at least one licensee without their consent, earning revenues from the individual unauthorized licenses and likely additional revenues from subscriptions with its customers.

97.     Shutterstock also entered into agreements with, and distributed the infringing copies of Plaintiff and class members' works to third-party partner website companies including TinEye, HelloRF (which Shutterstock owns in part), and StockFresh.

98.     Shutterstock works with these partner sites by providing Shutterstock's curated photography portfolio and directing them to display the photography, advertise Shutterstock licenses, and direct viewers to Shutterstock's site and online store.

99.     Shutterstock provided these partner sites with Shutterstock computer code (referred to as Application Programming Interface, or "API") and a link to copies of the Shutterstock computer files for the infringing copies of Plaintiff and the class members' works,  and directed

each partner site to further display Plaintiff's  and the class members' works on each of their sites and encourage viewers to visit Shutterstock's site to purchase licenses of Plaintiff and the class members' works.

100.    The broad distribution of Shutterstock's collection of photographs across the Internet via its partner sites is an important aspect of Shutterstock's business plan.

101.    Shutterstock's API terms require its partners to "incorporate the Shutterstock watermark" when displaying Shutterstock-provided photography and include a conspicuous indication that each photograph is "Powered by Shutterstock."

102.    StockFresh, TinEye, and HelloRF are Shutterstock partners and at all relevant times participated in this program.  In compliance with their partnership agreements with Shutterstock, these entities displayed the infringing copies alongside Shutterstock branding and advertisements.

103.    Because TinEye and StockFresh used Shutterstock's code and API, they are only able to display Shutterstock photographs while the photographs were "live" and available via Shutterstock's site.

104.    Plaintiff and all class members suffered damages from the infringing conduct by the contributor account partners and Shutterstock, which did not have authorization to copy, display, distribute and license any of the class members' works.

105.    Shutterstock receives a "direct financial benefit" from the licensing of works from its contributors' accounts.  For most contributor license fees sold on Shutterstock, Shutterstock retains 85% or more of the revenue which is a "direct financial benefit."  For a smaller subset of contributors, Shutterstock receives *only* 60% of the fee.

106.    In its SEC filings, Shutterstock has boasted of having paid out over $1 billion since 2003 to contributors. During this time, it is likely that Shutterstock generated as much as $7 billion

in licensing fees from contributors who uploaded their photos to Shutterstock. Shutterstock generally pays about 15% of licensing fee (as royalties) to contributors, and retains the other 85% from licensing fees.

107.    Plaintiff and each class member that is a copyright holder of a work and from which Shutterstock received a direct benefit – even after Shutterstock being put on notice that revenue was generated from infringing activity – are entitled to damages from Shutterstock in an amount equal to the ill-gotten fees kept by Shutterstock based on the "unauthorized license" fees, and lost licensing fees.

108.    Alternatively, Defendants' conduct caused Plaintiff and each class member to incur statutory damages for works that were registered within three months of infringement or first publication of up to $30,000.00 for each separate infringement of Plaintiff's and the class members' respective works that occurred after the Plaintiff's and class members had registered their respective works. Alternatively, Defendant is liable for up to $150,000.00 for willful infringement of works registered pursuant to 17 U.S.C. § 504.

109.    Shutterstock is also liable Plaintiff and the class members' have suffered damages and are entitled to recover their actual damages and to disgorge any additional profits of Defendant attributable to the CMI violations, pursuant to 17 U.S.C. § 1202(c)(2).

110.    Alternatively, and at Plaintiff and the class members' sole discretion exercised any time prior to entry of final judgment, Plaintiff and the class members are entitled to recover statutory damages for CMI violations in an amount between $2,500 and $25,000 per violation of the Digital Millennium Copyright Act, pursuant to 17 U.S.C. § 1203(c)(3)(B).

## V.   TOLLING OF THE STATUTE OF LIMITATIONS

111.   Throughout the Class Period, Defendant affirmatively suppressed, concealed, and omitted from Plaintiff and the class members its acts and omissions violating their rights. Defendant willfully and knowingly kept Plaintiffs and the class ignorant of vital information essential to their rights, and the violations of those rights, necessary to pursue a claim against Defendant, and as a result, Plaintiff and the class could not have discovered the violation of their rights, even upon the exercise of reasonable due diligence.

112.   Defendant was aware its actions were violating the rights of Plaintiff and the class members but continued to do so for its own financial gain, while suppressing, concealing and omitting this information from the Plaintiff and the class.

## VI.   CLASS ACTION ALLEGATIONS

113.   Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a) and Federal Rules 23(b)(2) and 23(b)(3), on behalf of herself and members of the class.  The Rule 23(b)(3) class consists of:

> All persons and entities whose copyrighted work was licensed by Shutterstock, who sent Shutterstock a notice to take down copyrighted works, and from which Shutterstock generated and retained licensing revenue from a Shutterstock contributor who did not have authorization to exploit any class members' copyrighted work, from three years before the date of filing of this Complaint to the present ("the Class").  The Class also includes all persons and entities whose copyrighted work was licensed by Shutterstock from a Shutterstock contributor who did not have authorization to exploit any class members' copyrighted work and unauthorized licensees who continued to distribute the copyrighted works which contain false copyright management information.

The Rule 23(b)(2) class seeks to enjoin Shutterstock and those acting in active concert (such as the unauthorized licensees) with it from improperly benefitting from, displaying or using Plaintiff's and the class members' copyrighted works without a license or express authority, including

destroying all such improperly used and/or displayed copyrighted works and false copyright management information.  The Rule 23(b)(2) class consists of:

> All persons and entities whose copyrighted work has been made available for distribution and display by Shutterstock without a lawful license or the express authority of the copyright holder.

Excluded from the classes are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

114.    As required by Fed. R. Civ. P. 23(a) (1), the members of the classes are so numerous that joinder of all members is impracticable.  Plaintiff believes that the class is so numerous and widely geographically dispersed throughout the United States (and the world) that joinder of all members is impracticable.  The exact number of class members is unknown, but is reasonably ascertainable with objective criteria that is in the possession of Shutterstock, including identification of all class members, Shutterstock's own designation of infringed photos, and all financial data directly associated with the infringing activity and ill-gotten gains from unauthorized licenses.

115.    Plaintiff will fairly and adequately protect and represent the interests of the classes. The interests of Plaintiff are aligned with, and not antagonistic to, those of the other members of the classes.

116.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

- Whether the class members had their copyrighted works licensed by Shutterstock through Shutterstock's licensing platform after being uploaded to the Shutterstock platform (or a Shutterstock partner) by a contributor account that did not have permission or authorization from the copyright holder to copy, distribute, license and/or make display the works available for distribution in exchange for licensing fees;

- Whether Shutterstock violated the Act by having actual knowledge of infringing works of any and all Class members, including Plaintiff, and whether Shutterstock retained any direct benefit from licensing the copyrighted works without authorization from Plaintiff and the class members *after* being sent a takedown notice;

- Whether Shutterstock knew or acted in reckless disregard that its actions infringed any of Plaintiffs and the class members' exclusive rights in their copyrighted works by retaining 100% of the revenue generated from licensing fees collected from infringed works *after* Shutterstock received a takedown notice;

- Whether Shutterstock refused to compensate Plaintiff and each class member with the revenue generated from the infringing activity and whether Shutterstock was unjustly enriched by the ill-gotten gains;

- Whether Shutterstock terminated any of the unauthorized licenses it granted to its customers/unauthorized licensees;

- Whether actual or statutory damages apply for each infringement and for CMI violations; and

- Whether Shutterstock's acts and/or omissions justify injunctive relief, other equitable remedies, and/or punitive damages.

117.   As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of other members of the classes since Plaintiff and all members of the classes owned copyrighted works that were improperly displayed on Shutterstock's website that Shutterstock made available to its customers for license and did in fact license such works.

118.   As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the classes.  Plaintiff has no interests adverse or antagonistic to those of the classes and has retained counsel experienced in complex class action litigation and federal copyright law.

119.   As further required by Fed. R. Civ. P. 23(b)(3), a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since the damages suffered by individual Class members may be relatively small, and the expense and burden of individual litigation would therefore make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

120.   If brought and prosecuted individually, the claims of each Class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

121.   Plaintiff will fairly and adequately protect the interests of the members of the Classes because her interests do not conflict with the interests of the members of the classes she seeks to represent.

122.   This action can be maintained as a class action under Rule 23(b)(2), because

Plaintiff and the class members seek injunctive relief, and all of the above Rule 23(a) factors are present.

123.    Defendants have acted or refuse to act on grounds generally applicable to the Plaintiff and the class members, resulting in the infringement of copyrighted works to the detriment of the Plaintiff and the class members and making injunctive or declaratory relief appropriate for the members of the class.

124.    Shutterstock's records will identify all contributors and licenses sold to its customers along with the sums received and allocated between Shutterstock and its contributors, and all takedown communications from actual copyright holders whose work has been infringed, Plaintiff therefore seeks to represent ascertainable classes, since determining inclusion in the classes and actual damages can be easily accomplished through Shutterstock's own business records that it is required to maintain under the Act for all licensed works.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Infringement of Copyrights (17 U.S.C. §§ 106, 501)

125.    Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

126.    Plaintiff is, and at all relevant times has been, the sole copyright owner of the Photos she validly registered with the U.S. Copyright Office. The deposit copy files used to register these Photos are attached hereto as Exhibit A and B.

127.    Among the exclusive rights granted to Plaintiff and members of the Class under the Act are the exclusive rights to reproduce, create derivative works from, distribute, perform, and display their Copyrighted Photos under 17 U.S.C. §§ 106 (1), (2), (3), (4) and (5).

128.    Even after learning that Defendant Shutterstock did not have authorization from Plaintiff or members of the Class to copy, distribute, display and license their respective copyrighted works, Shutterstock retained as much as 85% or more of the revenue generated from fees from infringing conduct of Shutterstock's unauthorized licensees of those copyrighted works.

129.    Defendants have violated Plaintiff and the class members' exclusive rights of reproduction, derivative work creation, display, copying, licensing, and distribution of their respective copyrighted works.

130.    Plaintiff and each class member own the copyright in their respective works.

131.    The unauthorized licenses to the works generated by Plaintiff and the class members and sold by Shutterstock, and any revenue generated, constitutes copyright infringement that is willful or reckless, undertaken in total disregard of and with indifference to Plaintiff's and class members' exclusive rights under the Act.

132.    As a result of Defendant's' infringements of Plaintiff's and the class members' copyright and exclusive rights under copyright, Plaintiff and the class members are entitled to actual damages (loss of a licensing fee and/or actual licensing fees that generated any profits Defendants made plus other nonexclusive factors) pursuant to 17 U.S.C. § 504(b) for Defendants' infringements of the copyrighted works.

133.    Alternatively, Plaintiff and the class members seek statutory damages pursuant to 17 U.S.C. § 504(c) where applicable.

134.    To the extent any of Plaintiff's or any class member's works remain displayed on Shutterstock's website for the purpose of soliciting licenses, or remain displayed by Shutterstock customer/unauthorized licensees that do not have valid licenses to those works, Defendant's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff

and class members great and irreparable injury that cannot fully be compensated or measured in money.

135.    Plaintiff and the class members have no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff and the class are entitled to permanent injunctive relief prohibiting Defendant Shutterstock and its licensees from further infringing Plaintiff's and the class members' copyrights and ordering Defendant and its unauthorized licensees to destroy all copies of the works made or used in violation of Plaintiff's and the class members' exclusive rights and to remove the works from any site that Defendant controls or owns or has access to such as the third-party licensing sites.

136.    As a direct and proximate result of Defendant's infringements of Plaintiff's and the class members' exclusive copyright in their works, Plaintiff and the Class have been damaged in an amount to be determined at trial.

137.    Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff and the Class irreparable injury that cannot fully be compensated with money damages.

138.    Plaintiff is also entitled to her reasonable attorney's fees and costs for the statutory damages claims.

## SECOND CLAIM FOR RELIEF

### Vicarious and/or Contributory Copyright Infringement

139.    Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

140.    Plaintiff is informed and believes and thereon alleges that Defendant Shutterstock knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Plaintiff and the Class's works as alleged herein.

141.    Such conduct included, without limitation, publishing Plaintiff and the class members' works obtained from third parties that Defendant Shutterstock knew, or should have known, were not authorized to publish such works.

142.    Defendant is vicariously liable for the infringement alleged herein because it had the right and ability to supervise the infringing conduct after it was given notice of such, and because it had a direct financial interest in the infringing conduct.

143.    Specifically, Defendant Shutterstock received revenue in direct connection with the aforementioned website listings of the works that incorporated the unauthorized copies of the Plaintiff and class members' works and was able to void or terminate the licensing of said works.

144.    Defendant Shutterstock licensed Plaintiff's and class members' works to third parties without Plaintiff's or class members' consent and caused those third parties to unlawfully reproduce, display, create derivative works from, and distribute the works, and financially benefitted from those unauthorized licenses.

145.    Defendant Shutterstock induced, participated in, and contributed to the infringement of each third-party licensee, and had the right and ability to supervise this infringing conduct and cause it to cease and desist by notifying of them the license was not valid and was void.

146.    By reason of the Defendant's acts of contributory and vicarious infringement as alleged above, Plaintiff and the Class have suffered and will continue to suffer substantial damages in an amount to be established at trial.

147.    Due to Defendant's acts of copyright infringement as alleged herein, Defendant obtained direct and indirect profits it would not otherwise have realized but for its infringement of Plaintiff's and the Class's rights in their respective works.

148.    As such, Plaintiff and the Class are entitled to disgorgement of Defendant's profits directly and indirectly attributable to Defendant's infringement of Plaintiff and the Class's rights in their works, in an amount to be established at trial.

149.    Defendant Shutterstock committed acts of copyright infringement, as alleged above, which were willful, reckless and intentional, which further subjects Defendant to liability for statutory damages under Section 504(c)(2) of the Act in the sum of up to $30,000 for infringement and one hundred fifty thousand dollars ($150,000.00) per willful infringement and/or a preclusion from asserting certain equitable and other defenses.

### THIRD CLAIM FOR RELIEF

### Violations of Copyright Management Information (17 U.S.C. §§ 1202 & 1203)

150.    Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

151.    As alleged above, Shutterstock affixed and distributed false copyright management information (Shutterstock's name and/or watermark as well as the name of the contributor who does not hold the copyright to the work) in connection with the reproduction, distribution, public display and unauthorized licenses to unauthorized licensees of Plaintiff and class members' works.

152.    As alleged above, the false copyright management information falsely identifies Shutterstock and/or the contributor, as opposed to Plaintiff and each class member, as the respective copyright interest holder in each of Plaintiff and the class members' works.

153.    The initial and/or continuing use of false copyright management information provided in connection with the reproduction, distribution, public display and unauthorized licenses to unauthorized licensees of Plaintiff and the class members' works is intended to facilitate or conceal the infringement of Plaintiff and the class members' exclusive copyrights.

154.    The false copyright management information is intended to induce customers and potential customers of Plaintiff and the class members' works to believe that Shutterstock, as opposed to Plaintiff and the class members, owns or controls the copyrights in Plaintiff's and the class members' works and to deny Plaintiff's and the class members' works the economic benefits of their works.

155.    As alleged above, unauthorized licensees of Shutterstock, such as CRC Press, also affixed and/or continue in an ongoing basis to distribute false copyright management information in connection with the reproduction, distribution, and public display of Plaintiff and the class members' works.  As alleged above, the false copyright management information incorrectly identifies Shutterstock and/or the contributor, as opposed to Plaintiff and the class members, as the copyright interest holder in Plaintiff's and the class members' works.

156.    After Plaintiff, and the class members, notified Shutterstock of infringement of their works (the implication being that any CMI crediting Shutterstock and a contributor was false), Shutterstock opted to do nothing to address the unauthorized licenses it had already issued to these works, instead permitting the unauthorized licensees to continue to use the works with false CMI (crediting Shutterstock and the contributor, such as with the CRC Press book title still being sold today) despite Shutterstock knowing, and having reasonable grounds to know, that such actions would lead to the continued sharing, dissemination, and distribution of such infringing photograph.

157.    These actions constitute willful and deliberate violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a).

158.    By reason of Shutterstock's CMI violations, Plaintiff and the class members' have suffered damages and are entitled to recover their actual damages and to disgorge any additional profits of Defendant attributable to the violations, pursuant to 17 U.S.C. § 1202(c)(2).

159.    Alternatively, and at Plaintiff and the class members' sole discretion exercised any time prior to entry of final judgment, Plaintiff and the class members are entitled to recover statutory damages in an amount between $2,500 and $25,000 per violation of the Digital Millennium Copyright Act for each CMI violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

160.    Further irreparable harm is imminent as a result of Defendant Shutterstock's conduct, and Plaintiff and the class members' works are without an adequate remedy at law. Plaintiff and the class members are therefore entitled to an injunction, in accordance with 17 U.S.C. § 1203(b), restraining Shutterstock, their officers, directors, agents, employees, representatives, assigns, and all persons and entities acting in concert with Shutterstock (including its unauthorized licensees) from engaging and continuing to engage in further violations of the Digital Millennium Copyright Act, including continuing to sell products including but not limited to books (including digital versions) that contain false CMI.

161.    Plaintiff and the class members are entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 1203(b)(4) and (5).

## VIII.   PRAYER FOR RELIEF

162.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment against Defendant as follows:

(a)    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff as the class representative, and Plaintiff's counsel as class counsel;

(b)    Awarding Plaintiff and other members of the Class either (i) actual damages and Defendant's profits, gains, or advantages of any kind attributable to Defendant's infringements of the copyrighted works; or (ii) alternatively, statutory damages of up to $30,000.00 per infringement or up to $150,000.00 for each instance of willful infringement of copyrighted works pursuant to 17 U.S.C. § 504;

(c)    Finding and declaring Defendant be required to account for all profits, income, receipts, or other benefits derived by Defendant as a result of its unlawful conduct as alleged herein;

(d)    Finding that Shutterstock committed CMI violations, and Plaintiff and the class members suffered damages and are entitled to recover their actual damages and to disgorge any additional profits of Defendant attributable to the violations, pursuant to 17 U.S.C. § 1202(c)(2).

(e)    Finding that Shutterstock committed CMI violations that Plaintiff and the class members are entitled to recover statutory damages in an amount between $2,500 and $25,000 per violation of CMI under the Digital Millennium Copyright Act, pursuant to 17 U.S.C. § 1203(c)(3)(B).

(f)    For declaratory relief under the Act and for an injunction providing that Defendant and all those acting in active concert with it (including unauthorized licensees), be enjoined from directly or indirectly infringing Plaintiff's and class members' rights under federal law in the copyrighted works at issue, whether now in existence or later

created, that are owned by Plaintiff and the class, including without limitation by using the Internet or any online media distribution system to reproduce (i.e. download) any of any of Plaintiff's or the class members' copyrighted works, or to make any of Plaintiff's or the class members' works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff and the class members.  Defendant also shall destroy all copies of Plaintiff's and the class members' works that Defendant has downloaded onto any computer hard drive or server, or any other medium where a work was used and is still displayed, and finding that Plaintiff and the class members' are therefore entitled to an injunction, in accordance with 17 U.S.C. § 1203(b), restraining Shutterstock, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Shutterstock (including its unauthorized licensees) from engaging and continuing to engage in further violations of the Digital Millennium Copyright Act, including continuing to sell products that contain false CMI and ordering destruction of those products.

(g)     Awarding Plaintiff's costs and expenses in this action, including all reasonable attorney's fees incurred herein, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1201 *et. seq.* and/or 17 U.S.C. § 1203(b)(4) and (5) for CMI violations;

(h)     Awarding Plaintiff and the other members of the Class pre-judgment interest from the time of the infringements; and

(i)     Awarding such other and further relief as the Court may deem just and proper.

## IX.     JURY TRIAL DEMANDED

163.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated: April 17, 2023.                    Respectfully submitted,

                                          **DUNCAN FIRM, P.A.**

                                          By: _/s/ James H. Bartolomei, III_____
                                          James H. Bartolomei Esq.
                                          SDNY Bar JB7747
                                          Of Counsel at Duncan Firm, P.A.
                                          809 W. 3rd Street
                                          Little Rock, Arkansas 72201
                                          Telephone: 501-228-7600
                                          james@duncanfirm.com

                                          and

                                          **CERA LLP**
                                          Solomon B. Cera (*Pro Hac Vice* forthcoming)
                                          Pamela A. Markert (*Pro Hac Vice* forthcoming)
                                          201 California Street, Suite 1240
                                          San Francisco, CA 94111
                                          Telephone: 415-977-2230
                                          scera@cerallp.com
                                          pmarkert@cerallp.com

                                          and

                                          **HOBEN LAW**
                                          Bryan D. Hoben, Esq.
                                          1112 Main Street
                                          Peekskill, New York 10566
                                          Telephone: 347-855-4008
                                          bryan@hobenlaw.com

                                          *Attorneys for Plaintiff*
                                          *and the Proposed Class*