UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
CYNTHIA HERRICK, *individually and on behalf of all*              :
*others similarly situated*,                                      :
                                                                  :
                                        Plaintiff,                :
                                                                  :
                    -v-                                           :          23 Civ. 3191 (JPC)
                                                                  :
SHUTTERSTOCK, INC.,                                               :          OPINION AND ORDER
                                                                  :
                                        Defendant.                :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Cynthia Herrick proceeds against Shutterstock, Inc. ("Shutterstock") in this putative class action, alleging (1) copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501; (2) vicarious and/or contributory copyright infringement; and (3) falsification of copyright management information ("CMI") under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. §§ 1202, 1203. Before the Court are Shutterstock's motion to dismiss Count Three, the falsification of CMI cause of action, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and its motion to strike the class allegations under Rule 12(f). For the reasons set forth below, the Court grants Shutterstock's motion to dismiss. The Court dismisses Count Three without prejudice, and grants Herrick leave to amend the Complaint, which leave Herrick is advised to take only if she is able to correct the deficiencies identified in this Opinion and Order and only after she carefully considers all the substantive challenges raised by Shutterstock—many of which the Court does not address herein. The Court denies Shutterstock's motion to strike the class allegations without prejudice to renewal.

## I.  Background

### A.    Facts[1]

Herrick, a wildlife photographer, owns the two copyrighted photographs at issue in this lawsuit.  Complaint ¶ 32.  The first photograph, bearing U.S. Copyright Registration Number VA 2-291-805, is entitled "Snowy Plover Baby's First Step" (the "Plover Photo").  *Id.* ¶ 33, Exh. A. The second, bearing U.S. Copyright Registration Number VAu 1-461-254, is entitled the "Snowy Flowy Egret" (the "Egret Photo").  *Id.* ¶ 49, Exh. B.

Shutterstock is a licensing company.  *Id.* ¶ 60.  It markets and sells photography and video licenses—in the form of subscription packages or individual licenses—through an online platform, which includes "content [that] is provided by a community of contributors from around the world." *Id.* ¶¶ 60, 67.  As described by Herrick, a "contributor" is "a person or business that submits their copyrighted photographs, illustrations, music, videos clips, and images to Shutterstock."  *Id.* at 2 n.1.  Shutterstock serves as the contributor's licensing agent, offering the copyrighted work for licensing and licenses to third-party customers.  *Id.*  Shutterstock pays contributors 15-40% of the fee it receives for licensing the contributor's works, and thus retains up to 85% of all revenue generated from the licenses sold.  *Id.*  Contributor submissions undergo a "rigorous vetting process [which] enables [Shutterstock] to provide confidence and indemnification to its customer/licensees that the images it licenses from its library have been appropriately licensed from copyright holders

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint and the exhibits attached thereto, Dkt. 1 ("Complaint").  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor"); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002) (explaining that a court may consider any written instrument attached to a complaint without converting a motion to dismiss to a motion for summary judgment).

for commercial or editorial use."  *Id.* ¶ 64; *see also id.* ¶ 67 (alleging that Shutterstock "boasts" that its "collection of content is provided by a community of contributors from around the world and is vetted through [Shutterstock's] proprietary technology and by a specialized team of reviewers to ensure that it meets [Shutterstock's] standards of quality and licensability").

In January 2022, Herrick discovered that her Plover Photo was being displayed and offered for licensing on Shutterstock's website by a contributor account named "MTKhaledMahmud," as shown below, with the arrow designating her photograph:



*Id.* ¶ 33.  She noticed that the photo had received a Shutterstock designation of "High Usage," indicating that Shutterstock had already sold numerous licenses for the Plover Photo.  *Id.* ¶ 37. Herrick further discovered that her Plover Photo had been licensed by Shutterstock for publication to CRC Press, an offshoot of the publisher Routledge.  *Id.* ¶¶ 38-39.  CRC Press has published a textbook, *Human-Wildlife Interactions: From Conflict to Coexistence*, using the Plover Photo with a source description underneath it that reads, "plover photo by MTKhaled mahmud, Shutterstock 1726619095", as shown below:



FIGURE 7.7   Nesting California least tern (a) and snowy plover with chick (b).
*Source:* Tern photo by Richard Fitzer, Shutterstock 13792759 and plover photo by MTKhaled mahmud, Shutterstock 1726619095.

On January 24, 2022, Herrick notified Shutterstock through email of MTKhaledMahmud's infringement of her Plover Photo, following up on her email that same day with screenshots of the unauthorized use and the original raw photo file with metadata showing the date, time, camera, body, lens, and settings that were used to capture the image.  *Id.* ¶¶ 34-35.  Herrick demanded that Shutterstock compensate her with all profits from the licensing of her photograph.  *Id.* ¶ 36. Despite this demand, Shutterstock failed to provide Herrick with an accounting or compensate her with all profits from unauthorized licensing fees it received from the Plover Photo.  *Id.* ¶ 40.

As alleged, Shutterstock "generally suspends additional unauthorized licensing of the copyright works upon receiving notification from a copyright owner of infringement."  *Id.* ¶ 7. But it "refuses to terminate the unauthorized licenses issued through its platform and retains its share of the ill-gotten licensing fees."  *Id.*  As further alleged, with respect to the instant matter, Shutterstock has refused to terminate or void its license with CRC Press, which continues to sell the book displaying Herrick's photograph, as well as any other of the unauthorized licenses it granted to its licensee/customers, for that matter.  *Id.* ¶¶ 41-43.

Herrick soon thereafter found that her Egret Photo had also been uploaded to the same Shutterstock contributor account, "MTKhaledMahmud," as shown below, with the arrow designating her photograph:



*Id.* ¶¶ 49-50.  Herrick asserts that she "does not know whether this photo generated unauthorized licensing fees for Shutterstock.  Only Shutterstock does."  *Id.* ¶ 50.

In connection with the above-described conduct, Herrick seeks to hold Shutterstock directly and contributorily liable for copyright infringement, *id.* ¶¶ 125-149, and directly liable for the falsification of CMI, *id.* ¶¶ 150-161.  As to the latter claim, Herrick alleges that Shutterstock affixed false CMI in the form of "Shutterstock's name and/or watermark as well as the name of the contributor who does not hold the copyright to the work in connection with the reproduction, distribution, public display and unauthorized licenses to unauthorized licensees" of her copyrighted photographs.  *Id.* ¶ 151.

Although she has not yet moved for class certification, Herrick alleges that she intends to represent the following two classes, the first under Federal Rule of Civil Procedure 23(b)(3) and the second under Rule 23(b)(2).  The putative Rule 23(b)(3) class consists of:

> All persons and entities whose copyrighted work was licensed by Shutterstock, who sent Shutterstock a notice to take down copyrighted works, and from which Shutterstock generated and retained licensing revenue from a Shutterstock contributor who did not have authorization to exploit any class members' copyrighted work, from three years before the date of filing of this Complaint to the present ("the Class").  The Class also includes all persons and entities whose copyrighted work was licensed by Shutterstock from a Shutterstock contributor who did not have authorization to exploit any class members' copyrighted work and unauthorized licensees who continued to distribute the copyrighted works which contain false copyright management information.

*Id.* ¶ 113.  The putative Rule 23(b)(2) class consists of:

> All persons and entities whose copyrighted work has been made available for distribution and display by Shutterstock without a lawful license or the express authority of the copyright holder.

*Id.*  According to Herrick, common questions of law and fact among these proposed classes include:

> [1] Whether the class members had their copyrighted works licensed by Shutterstock through Shutterstock's licensing platform after being uploaded to the Shutterstock platform (or a Shutterstock partner) by a contributor account that did not have permission or authorization from the copyright holder to copy, distribute, license and/or make display the works available for distribution in exchange for licensing fees;
>
> [2] Whether Shutterstock violated the Act by having actual knowledge of infringing works of any and all [c]lass members, including Plaintiff, and whether Shutterstock retained any direct benefit from licensing the copyrighted works without authorization from Plaintiff and the class members *after* being sent a takedown notice;
>
> [3] Whether Shutterstock knew or acted in reckless disregard that its actions infringed any of Plaintiffs and the class members' exclusive rights in their copyrighted works by retaining 100% of the revenue generated from licensing fees collected from infringed works *after* Shutterstock received a takedown notice;

[4] Whether Shutterstock refused to compensate Plaintiff and each class member with the revenue generated from the infringing activity and whether Shutterstock was unjustly enriched by the ill-gotten gains;

[5] Whether Shutterstock terminated any of the unauthorized licenses it granted to its customers/unauthorized licensees;

[6] Whether actual or statutory damages apply for each infringement and for CMI violations; and

[7] Whether Shutterstock's acts and/or omissions justify injunctive relief, other equitable remedies, and/or punitive damages.

*Id.* ¶ 116.  Finally, Herrick alleges that her claims are typical of the claims of the other class members, *id.* ¶ 117, that she will fairly and adequately protect the interest of the class, *id.* ¶ 118, and that membership in the class is ascertainable because determining inclusion in the class "can be easily accomplished through Shutterstock's own business records," *id.* ¶ 124.

## B.    Procedural History

On April 17, 2023, Herrick initiated this putative class action against Shutterstock, bringing claims for (1) copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501, Complaint ¶¶ 125-138 (Count One); (2) vicarious and/or contributory copyright infringement, *id.* ¶¶ 139-149 (Count Two); and (3) falsification of CMI under the DMCA, 17 U.S.C. §§ 1202, 1203, Complaint ¶¶ 150-151 (Count Three).  On June 30, 2023, Shutterstock moved to dismiss Count Three for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and further moved to strike the class allegations under Rule 12(f).  Dkt. 27 ("Motion").  On August 15, 2023, Herrick opposed, Dkt. 30 ("Opposition"), and two weeks later, Shutterstock replied, Dkt. 32.

## II.  Legal Standards

## A.    Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro*, 807 F.3d at 544, it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## B.       Rule 12(f) Motion to Strike

Under Rule 12(f), a court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f).   "Motions to strike are generally disfavored."   *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Reynold v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) ("Motions to strike under Rule 12(f) are rarely successful.").   And "a motion to strike class allegations . . . is even more disfavored."   *Mazzola*, 849 F. Supp. 2d at 410 (internal quotation marks omitted).   That is because such a motion asks a "reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."   *Id.*   Accordingly, a motion to strike class allegations is typically "considered premature unless it addresses issues 'separate and apart from the issues that will be decided on a class certification motion.'"   *Blagman v. Apple Inc.*, No. 12 Civ. 5453 (ALC), 2013 WL 2181709, at *2-3 (S.D.N.Y. May 20, 2013) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)).   To prevail on such a motion, in any event, a

defendant must "demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." *Reynolds*, 136 F. Supp. 3d at 511.

### III.  Discussion

As mentioned, Shutterstock has moved to dismiss Herrick's false CMI claim under Rule 12(b)(6) and further to strike Herrick's class allegations under Rule 12(f).  The Court considers each motion in turn.

### A.  Motion to Dismiss Falsification of Copyright Management Information Claim

Section 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement provide copyright management information that is false, or distribute or import for distribution copyright management information that is false."  17 U.S.C. § 1202(a).  In bringing her Section 1202 claim, Herrick alleges that "Shutterstock affixed and distributed false copyright management information" in the form of "Shutterstock's name and/or watermark as well as the name of the contributor who does not hold the copyright to the work in connection with the reproduction, distribution, public display and unauthorized licenses to unauthorized licensees" of her copyrighted photographs.  Complaint ¶ 151.  She further alleges that "the false copyright management information falsely identifies Shutterstock and/or the contributor, as opposed to" Herrick, and that the "initial and/or continuing use of false copyright management information provided in connection with the reproduction, distribution, public display and unauthorized licenses" is "intended to facilitate or conceal the infringement" of Herrick's exclusive copyrights.  *Id.* ¶¶ 152-153.  To support these accusations, Herrick merely "realleges and incorporates by reference the preceding paragraphs of [the] Complaint as if fully set forth herein."  *Id.* ¶ 150.

As a preliminary matter, the Court strains to discern the precise nature of Herrick's Section 1202 claim from these conclusory allegations, which are divorced from the specific factual circumstances alleged.  It is thus unsurprising that Shutterstock's construction of Herrick's claim diverges from Herrick's apparent intention.  For instance, in moving to dismiss this claim, Shutterstock contends, *inter alia*, that a secondary liability theory is not cognizable under the plain language of Section 1202.  *See* Motion at 9-10.  Shutterstock thus appears to have assumed that Herrick is raising a secondary liability theory for her CMI claim because, in Shutterstock's view, Herrick's allegations pertaining to CRC Press's continued sale of its textbook "are not relevant to [Herrick's] claim for primary liability" of falsification of CMI.  *Id.* at 8 n.5.  Yet Herrick maintains that she is seeking "damages related [only] to Shutterstock's *direct* liability for its post-takedown notice CMI violations," and accuses Shutterstock of "shadowbox[ing] with self-serving interpretations" of her allegations.  Opposition at 11.  Bewilderingly, Herrick proceeds nevertheless to defend the sufficiency of her allegations on secondary liability grounds.  *See id.* at 12 ("Plaintiff also sufficiently pleads that Shutterstock (a) had the right and ability to supervise and control any licenses it issued and should have voided the license (but chose not to), (b) Shutterstock profited with direct benefits of the infringing activity and CMI violations, and (c) Plaintiff and the class members put Shutterstock on actual notice of infringement.  Moreover, Plaintiff has pled that Shutterstock has refused, and continues to refuse, to take any action to prevent existing and continuing DMCA violations of her photos by third parties who have licensed Plaintiff's photos from Shutterstock as the licensee.").

Given Herrick's express disavowal of her intention to bring a CMI claim based on a secondary theory liability, the Court disregards Shutterstock's challenge on that score, expressing no opinion on whether such a claim is cognizable under Section 1202.  Instead, the Court limits its

present analysis to considering whether Herrick has plausibly alleged Shutterstock's *direct* liability under the statute. To that end, Shutterstock contends that Herrick has failed to adequately allege the necessary scienter. The Court agrees.

To state a claim under Section 1202(a), a plaintiff must meet a "double scienter requirement" by plausibly alleging that the defendant both (1) knowingly provided false copyright information and (2) did so with the intent to induce, enable, facilitate, or conceal an infringement. *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018); *see also Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) ("To state a claim under Section 1202(a), a plaintiff must allege (1) the provision or distribution of copyright management information ('CMI'); (2) that the CMI was false; (3) that the defendant knew that the CMI was false; and (4) that the Defendant acted with the intent to cause or conceal copyright infringement."). Solely for purposes of the instant analysis, the Court assumes without deciding that Shutterstock's watermark, as superimposed on Herrick's Plover Photo, as well as the CRC Press textbook's source designation crediting Shutterstock and the contributor account MTKhaledMahmud for the Plover Photo, both constitute false CMI.[2]

In opposing dismissal, Herrick urges that her allegations with respect to the "notice of the infringement, her take-down demand provided to [Shutterstock,] and Shutterstock's takedown of the photo from its system" plausibly demonstrate Shutterstock's "knowledge of the falsity of the CMI associated with [Herrick's Plover Photo]." *See* Opposition at 9 (citing Complaint ¶¶ 7, 34-36, 41, 43-44, 52, 55, 57, 107). The Court does not disagree that these allegations plausibly

---

[2] Herrick does not appear to bring a false CMI claim in connection with the Egret Photo. *See* Opposition at 1-12 (in opposing dismissal of her CMI claim, discussing only her allegations in connection with the Plover Photo); *see also* Complaint ¶ 52 (alleging Shutterstock's actual knowledge of infringement only with respect to the Plover Photo).

demonstrate that Shutterstock learned, through Herrick's January 2022 "take-down notice," that the Plover Photo had been attributed incorrectly to the contributor account.  But fatal to Herrick's claim is her failure to allege any facts suggesting that Shutterstock, once it acquired such knowledge of Herrick's ownership of the Plover Photo, engaged in any conduct proscribed by Section 1202.  In other words, Herrick simply has not alleged that Shutterstock *provided* or *distributed* the false copyright information once Shutterstock learned of its falsity.

Instead, Herrick charges Shutterstock only with its alleged "fail[ure] to terminate or void the license with CRC Press."  Complaint ¶ 41.  Nothing in the statutory text of Section 1202(a) supports a finding of liability for a *failure* to act, however.  Rather, Section 1202(a) proscribes only affirmative acts—specifically, distributing false CMI, providing false CMI, and importing for distribution false CMI.  *See* 17 U.S.C. § 1202(a); *cf. Mango v. Buzzfeed*, 970 F.3d 167, 172 (2d Cir. 2020) (reiterating the well-settled principle that statutory construction "begin[s] with the language of the statute" in interpreting Section 1202(b) of the DMCA (citation omitted)).  And to the extent Herrick attempts to hold Shutterstock *directly* liable for *CRC Press's* continued sale of the textbook attributing the Plover Photo to Shutterstock and MTKhaledMahud, the Court similarly finds no statutory basis to hold Shutterstock directly liable for actions taken by a third party.  Nor has Herrick, as Shutterstock notes, provided any authority in support of this strained theory that a "*licensor* distributes false CMI knowingly and with the intent to induce infringement based on a *licensee's* continued use after the licensor receives notice."  Reply at 4 (emphasis in original).

The cases on which Herrick relies, *see* Opposition at  10-11, are readily distinguishable:  in each of those cases, unlike here, the charged entity was alleged to *itself* have provided or distributed false CMI *after* learning of its falsity.

12

For instance, in *Agence France Presse v. Morel*, the defendant/counter-plaintiff, professional photojournalist Daniel Morel, brought, among others, a false CMI counterclaim against Agence France Presse ("AFP"), a French news agency, and a related false CMI third-party claim against Getty Images (US) Inc. ("Getty"), an image licensing company.  769 F. Supp. 2d 295, 298-301, 304-05 (S.D.N.Y. 2011); *see* Opposition at 10.  At issue were photographs taken by Morel, posted on his social media webpage, and subsequently copied by Lisandro Suero, who then posted the photographs on his own webpage.  *Agence France Presse*, 769 F. Supp. 2d at 298-99.  As alleged, an AFP employee viewed the photographs on Morel's webpage, asked Morel about the photographs, and when Morel failed to respond quickly enough, instead copied the photographs from Suero's webpage.  *Id*. at 299.  As further alleged, those photographs were then marketed and distributed by AFP, transmitted to Getty, and labeled with the credit line "AFP/Getty/Lisandro Suero," to designate AFP and Getty as its licensing agents and Suero as the photographer.  *Id.* at 299-300.  The Court found that Morel had stated a false CMI claim against AFP because Morel had plausibly alleged that AFP knew that Morel was the actual owner of the photographs from the start and nonetheless attributed the photographs to Suero.  *Id.* at 304-05.  The Court further found that Morel had stated a false CMI claim against Getty, because Morel had alleged that even after AFP instructed Getty to change the photographer credit from Suero to Morel, Getty continued to license the photographs crediting Suero.  *Id.* at 305.

In *Aaberg v. Francesca's Collections*, certain of the plaintiffs, creators and sellers of enamel pins bearing their original designs, brought a false CMI claim against a group of defendants that included retail companies and distributors.  No. 17 Civ. 115 (AJN), 2018 WL 1583037, at *1-2 (S.D.N.Y. Mar. 27, 2018); *see* Opposition at 10.  These plaintiffs alleged that the distributor-defendants had purchased the plaintiffs' pins, removed the packaging identifying the plaintiffs as

the authors and copyright owners, and replaced the packaging with new, false information. *Aaberg*, 2018 WL 1583037, at *2  These pins were, in turn, displayed and sold by the retailer defendants.  *Id.*  One such retailer-defendant, Francesca's, challenged the adequacy of the plaintiffs' CMI claim on scienter grounds, contending that the plaintiffs had failed to allege that Francesca's knew that the distributors had removed or altered the CMI from the plaintiffs' pins. *Id.* at *9.  But the court rejected that argument because the plaintiffs alleged that even after they "contacted Francesca's with complaints of the infringement, . . . Francesca's continued to sell infringing products nonetheless."  *Id.*

Finally, in *Penske v. Shutterstock*, which involved the same defendant as here, the plaintiff brought a false CMI claim predicated on the defendant's alleged representation of ownership of the copyright in the plaintiff's photographs.  548 F. Supp. 3d 370, 381-82 (S.D.N.Y. 2021); *see Opposition* at 10-11.  As alleged, the plaintiff and the defendant had entered into a licensing agreement, under which the plaintiff retained ownership of the copyright for all photographs produced as a result of the agreement.  *Penske*, 548 F. Supp. 3d at at 373-74.  As further alleged, the defendant nonetheless represented itself as the owner of the copyright in the photographs—in part by displaying its watermark on the photographs and omitting any mention of the plaintiff— both before and after the defendant ultimately terminated that agreement.  *Id.* at 374-75.  And after it terminated the agreement, the defendant continued to display the plaintiff's photographs on its online platform and continued to license the photographs to others.  *Id.* at 375.  Based on these allegations, the court held that the plaintiff had sufficiently stated a false CMI claim.  *Id.* at 381-82.

At bottom, the parties charged with false CMI violations in these three cases were alleged to have *themselves* displayed, sold, or licensed works attributed to the wrong person—all *after* learning about the falsity of that ownership information.  But here Shutterstock is not alleged to

have taken any such action after learning of the potential copyright infringement of the Plover Photo.[3]  Accordingly, the Court grants Shutterstock's motion to dismiss and dismisses Count Three, Herrick's false CMI claim.

The Court next turns to Herrick's request for leave to amend her CMI claim.  Opposition at 12 n.8 ("Plaintiff contends she has adequately alleged an underlying DMCA violation and related secondary claims for relief.  If the Court, however, concludes otherwise, leave to amend should be permitted.").  Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In deciding whether to grant leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020) (citation omitted).  Having considered these factors, the Court grants Herrick leave to file an Amended Complaint, in the event Herrick can plead facts that would adequately state a CMI claim.  Herrick has not yet amended her Complaint, nor has discovery commenced.  And as this case "is still in its infancy, there would be minimal prejudice to [Shutterstock]" in granting leave to amend.  *Id.* at *10.  But once again, Herrick should amend *only* if she is able to resolve the pleading deficiencies outlined in this Opinion and Order.  The Court further advises Herrick to consider carefully all the substantive challenges raised by Shutterstock, some of which the Court did not address above.

---

[3] In fact, the only action that Shutterstock is alleged to have taken after receiving such notice was to *remove* the photograph from its online platform, Complaint ¶ 7—presumably to *prevent* further copyright infringement.

**B.      Motion to Strike Class Allegations**

Turning to Shutterstock's Rule 12(f) motion to strike Herrick's class allegations, the Court begins by reiterating that such motions are especially disfavored, *see Mazzola*, 849 F. Supp. 2d at 410, and that, where, as here, the defendant's arguments are "indistinguishable from the issues that would be decided in the context of a motion for class certification," the motion is generally considered procedurally premature, *Chen-Oster*, 877 F. Supp. 2d at 117.  The Court nonetheless addresses the substance of Shutterstock's arguments, given Shutterstock's insistence that class certification is impossible from the face of the Complaint regardless of any facts that Herrick may obtain from discovery.  *See* Motion at 10-25; *see also Chen-Oster*, 877 F. Supp. at 117-20 (addressing the substance of the defendant's motion to strike the class allegations, even though the motion raised the same issues that would be decided in the class certification context, because the defendant was "adamant that [the] [p]laintiff's class allegations fail as a matter of law"); *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008) (explaining that "when a claim cannot succeed as a matter of law, the Court should not certify a class on the issue" (citation omitted)).

Considering the nature of Shutterstock's challenges, the Court briefly sets out the requirements for class certification.  A plaintiff must first establish the factors in Rule 23(a): that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  A plaintiff must also prove that the action falls within one of three categories under Rule 23(b)—namely, that: (1) prosecuting separate actions would create a risk of inconsistent or prejudicial adjudications; (2) the conduct of the

defendant applies generally to the class; or (3) questions of law or fact common to class members predominate over those affecting individual members and a class action is thus superior to other available methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b).  Finally, the Second Circuit "recognize[s] an implied requirement of ascertainability."  *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

As earlier mentioned, Herrick seeks to certify the two proposed classes.  The putative Rule 23(b)(3) class consists of:

> All persons and entities whose copyrighted work was licensed by Shutterstock, who sent Shutterstock a notice to take down copyrighted works, and from which Shutterstock generated and retained licensing revenue from a Shutterstock contributor who did not have authorization to exploit any class members' copyrighted work, from three years before the date of filing of this Complaint to the present ("the Class").  The Class also includes all persons and entities whose copyrighted work was licensed by Shutterstock from a Shutterstock contributor who did not have authorization to exploit any class members' copyrighted work and unauthorized licensees who continued to distribute the copyrighted works which contain false copyright management information.

Complaint ¶ 113.  Meanwhile, the putative Rule 23(b)(2) class consists of:

> All persons and entities whose copyrighted work has been made available for distribution and display by Shutterstock without a lawful license or the express authority of the copyright holder.

*Id.*  In moving to strike, Shutterstock contends that these classes (1) are unascertainable because they are not defined by objective criteria and constitute improper "fail-safe" classes and (2) fail to meet Rule 23(a)'s typicality and commonality requirements.  Motion at 13-24.  And specifically with respect to Herrick's Rule 23(b)(3) class, Shutterstock further argues that Herrick cannot demonstrate that a class action is superior to other available methods for adjudicating the instant dispute.  *Id.* at 24-25.  The Court considers each argument in turn.

17

### 1.       Ascertainability

As defined in this Circuit, the ascertainability requirement "merely asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries.  This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way."  *In re Petrobas Sec.*, 862 F.3d 250, 269 (2d Cir. 2017).  As a general matter, here, membership in Herrick's proposed classes as currently defined will require proof of ownership of a copyrighted work, distribution of that work on Shutterstock, and the absence of express authorization for such distribution from the putative class members.  *See* Complaint ¶ 113; Motion at 13.

Shutterstock first charges that determinations based on these criteria would require "significant factual development," and claims that it lacks the requisite documents to aid in these determinations and that Herrick thus would need to rely exclusively on putative members' self-serving affidavits to identify class members.  Motion at 14-16.  But these concerns go to the administrative feasibility of identifying class members—a showing that the Second Circuit has expressly rejected in its articulation of the ascertainability requirement.  *See In re Petrobas Sec.*, 862 F.3d at 269 ("[W]e decline to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage.").

Shutterstock further argues that the proposed class definitions create improper "fail-safe" classes.  Motion at 17-18.  A fail-safe class is one whose definition "shields the putative class members from receiving an adverse judgment." *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (citation omitted).  In such a class, "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Id.*  Fail-safe classes thus tend to be defined in terms of a "legal injury." *Gregory v. Stewart's Shops Corp.*, No. 7:14-

CV-33, 2016 WL 8290648, at *18 (N.D.N.Y. July 8, 2016).  On this point, Herrick concedes that the proposed class definition's reliance on the absence of "authorization" to or a valid "license" with Shutterstock *may* raise fail-safe concerns, but urges that modification of the class definition is preferable to striking class allegations.  Opposition at 18.  The Court agrees, and thus declines to strike the class allegations on this ground.  *Cf. Carr v. Johnson & Johnson Consumer Inc.*, No. 21 Civ. 6557 (EK), 2023 WL 3504662, at *5-6 (E.D.N.Y. May 17, 2023) (declining to strike the class allegations based on potential fail-safe concerns because "concerns about the potential 'fail-safe' nature of the proposed class are best resolved at the class certification stage, not through a motion to strike" (quoting *Owens v. Starion Energy, Inc.*, No. 16-CV-1912, 2017 WL 2838075, at *9 (D. Conn. June 30, 2017))).

### 2.        Commonality and Predominance

The "commonality" inquiry requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Under this standard, the class members must share "a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The commonality requirement concerns "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quoting *Wal-Mart Stores*, 564 U.S. at 350 (emphasis in original)).  "[F]or purposes of Rule 23(a)(2) even a single common question will do."  *Wal-Mart Stores*, 564 U.S. at 359 (cleaned up).  Further, where, as here, a plaintiff seeks to certify a Rule 23(b)(3) class for monetary damages, such common questions must also "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

Shutterstock argues that Herrick cannot meet the commonality or predominance requirements because the determinations of copyright ownership and of Shutterstock's knowledge and intent with respect to the licensing and distribution of each copyrighted work are individualized inquiries that predominate over any common issues of fact.  Motion at 22-24.  But Shutterstock, in portraying these determinations as purely "individualized" issues, fails to appreciate that Herrick's class claims, as presented in the Complaint, are uniformly premised on Shutterstock's general practices after it receives a takedown notice alerting it to potential copyright infringement, including whether it retains any monetary benefits it received before being put on notice of potential infringement and what subsequent actions, if any, it undertakes with respect to its agreements with its licensees.  *See* Complaint ¶¶ 57-59.  Accordingly, the Court is not prepared to hold at this early stage that it is *impossible* for Herrick's proposed classes to meet the commonality and predominance requirements for class certification.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  This standard "does not require a showing that the named plaintiffs' claims are identical to those of the class members."  *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 356 (S.D.N.Y. 2002).  "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding."  *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002).  "In the Second

20

Circuit, analysis of Rule 23(a)(3)'s typicality requirement often converges with that of commonality." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 70-71 (S.D.N.Y. 2018).

As to typicality, Shutterstock urges that Herrick's claims for copyright infringement based on contributory and vicarious liability, in particular, are unique to the circumstances surrounding her own and Shutterstock's conduct with respect to Herrick's works.   Motion at 19-20. Shutterstock further argues that Herrick's direct infringement claim also fails on typicality grounds because her class definitions "do not distinguish between registered and non-registered works, or between members with partial rather than complete ownership." *Id.* at 21-22.  These arguments largely overlap with Shutterstock's commonality arguments and fail for the same reason.  Once again, each class member's claim arises from Shutterstock's practices in responding to a notice of potential copyright infringement.  At this preliminary stage, this common nucleus is enough to raise the possibility that Herrick's proposed classes can meet the typicality requirement.

### 4.      Superiority

Finally, with respect to Herrick's Rule 23(b)(3) class, Shutterstock argues that Herrick cannot demonstrate that a class action is the superior method of adjudicating the instant dispute first because the proposed class is "on its face, unmanageable" and second because there "is no conceivable benefit to concentrating the claims of potentially thousands of individuals in this Court because a case-by-case determination of liability is required."  Motion at 24-25.  The Court has already determined that Shutterstock's concerns as to the individualized nature of the class claims are both overstated and premature at this stage, and its conclusion remains the same.

* * *

21

Accordingly, the Court denies Shutterstock's Rule 12(f) motion to strike the class allegations without prejudice to Shutterstock's renewing its arguments, if appropriate, at the class certification stage.

## IV.  Conclusion

For the foregoing reasons, Shutterstock's motion to dismiss is granted, and Count Three of the Complaint is dismissed without prejudice.  Should Herrick decide to amend her Complaint, she must do so within thirty days of this Opinion and Order.  If she fails to file an amended complaint within thirty days or does not obtain an extension of time to do so by that date, the Court will dismiss Count Three with prejudice.  Moreover, Shutterstock's motion to strike is denied without prejudice to renewal.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 27.

SO ORDERED.

Dated: March 29, 2024
New York, New York

JOHN P. CRONAN
United States District Judge