**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CYNTHIA HERRICK,<br><br>                              Plaintiff,<br><br>              v.<br><br>SHUTTERSTOCK, INC.,<br><br>                              Defendant. | 1:23-cv-03191-JPC |

**MEMORANDUM OF LAW OF DEFENDANT SHUTTERSTOCK IN OPPOSITION TO <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

DAVIS WRIGHT TREMAINE LLP

James Rosenfeld
Hilary Oran
1251 Avenue of the Americas, 42nd  Floor
New York, New York 10020
Phone: (212) 489-8230
Fax:    (212) 489-8340
jamesrosenfeld@dwt.com
hilaryoran@dwt.com

Sean Sullivan (admitted *pro hac vice*)
Sarah E. Burns (admitted *pro hac vice*)
865 S Figueroa Street, Suite 2400
Los Angeles, CA 90017
Phone: (213) 633-8644
Fax:  (213) 633-6899
seansullivan@dwt.com
saraburns@dwt.com

Attorneys for Defendant Shutterstock, Inc.
*Attorneys for Shutterstock, Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

      A.     Shutterstock ........................................................................................................... 2

      B.     Plaintiff ................................................................................................................. 3

      C.     Plaintiff's Proposed Class ..................................................................................... 4

      D.     The Takedown Requests ....................................................................................... 4

ARGUMENT .................................................................................................................................. 6

I.     Plaintiff Cannot Establish The Stringent Requirements Of Rule 23 To Warrant
     Class Certification ............................................................................................................... 7

      A.     Plaintiff's Proposed Class Is Not Ascertainable. ................................................. 7

            1.     Whether Shutterstock Can Identify "Licensees" Is Irrelevant to
                  Identifying Class Members. ...................................................................... 8

            2.     The Question of Copyright Ownership Is Not Objective. ......................... 8

      B.     Plaintiff Has Failed to Carry Her Burden of Showing Common Issues
            Predominate for the Putative Class. .................................................................... 10

            1.     Issues of Ownership, Registration and Infringement Preclude
                   Certification. ........................................................................................... 10

            2.     Individualized Secondary-Liability Issues Preclude Certification. .......... 20

            3.     Shutterstock's Defenses Also Require Individualized
                   Determination. ......................................................................................... 22

            4.     Plaintiff's Commonality Arguments Confirm She Cannot Show
                   Commonality Or Predominance. .............................................................. 24

      C.     Plaintiff Cannot Establish Typicality or Adequacy .......................................... 25

      D.     A Class Action is Not Superior to Other Methods of Resolving This
            Conflict .............................................................................................................. 27

            1.     None Of The Factors Weigh In Favor Of Superiority. ............................ 27

i

2.      *Bartz v. Anthropic* Proves Class Treatment Is Not Superior Here............ 31

II.     Plaintiff Cannot satisfy rule 23(b)(2) ............................................................................... 33

CONCLUSION ............................................................................................................................... 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&E Television Networks, LLC v. Big Fish Ent., LLC*,
No. 22 CIV. 7411, 2023 WL 4053871 (S.D.N.Y. June 16, 2023)...........................................13

*Abdin v. CBS Broad. Inc.*,
971 F.3d 57 (2d Cir. 2020)....................................................................................................13

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)...............................................................................................................6

*Am. Geophysical Union v. Texaco Inc.*,
802 F. Supp. 1 (S.D.N.Y. 1992), *amended* (Oct. 26, 1992) *aff'd*, 37 F.3d 881 (2d Cir. 1994),
*aff'd and order amended and superseded by* 60 F.3d 913 (2d Cir. 1994).........................14, 24

*Appiah v. Home Depot U.S.A., Inc.*,
No. 3:20-CV-00489, 2021 WL 5847150 (D. Conn. Dec. 9, 2021) ...........................................7

*Aquarian Found., Inc. v. Lowndes*,
127 F.4th 814 (9th Cir. 2025) ...............................................................................................10

*Bartz v. Anthropic PBC*,
791 F. Supp. 3d 1038 (N.D. Cal. 2025) ......................................................................31, 32, 33

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)...................................................................................................34

*Blackman v. Teespring, Inc.*,
No. 19-cv-01494, 2019 WL 7832600 (N.D. Cal. July 12, 2019) ...........................................11

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)...................................................................................................25

*Bryant v. Media Right Prods., Inc.*,
603 F.3d 135 (2d Cir. 2010)...................................................................................................19

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ...................................................................................................31

*Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998)...................................................................................................24

*City of L.A. v. Lyons*,
461 U.S. 95 (1983)..................................................................................................................35

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).................................................................................1, 6, 10, 18

*Cox Commc'ns, Inc. v. Sony*,
   146 S. Ct. 959 (2026).........................................................................................20

*Crysknife Cap. v. Liberty Specialty Mkts.*,
   No. 22 Civ. 7912, 2023 WL 3255777 (S.D.N.Y. May 3, 2023).......................14, 15

*David v. Showtime/Movie Channel, Inc.*,
   697 F. Supp. 752 (S.D.N.Y. 1988) .......................................................................12

*Diacakis v. Comcast Corp.*,
   No. C 11–3002, 2013 WL 1878921 (N.D. Cal. May 3, 2013) ...............................34

*Est. of Berlin v. Stash Records, Inc.*,
   No. 95 Civ. 6575, 1996 WL 374176 (S.D.N.Y. July 2, 1996) ...............................27

*Finch v. N.Y. State Off. of Child. & Fam. Servs.*,
   252 F.R.D. 192 (S.D.N.Y. 2008) ..........................................................................33

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
   297 F.R.D. 64 (S.D.N.Y. 2013) ................................................................. *passim*

*Forest Park Pictures v. Universal Television Network, Inc.*,
   683 F.3d 424 (2d Cir. 2012)...................................................................................23

*Forman v. Data Transfer, Inc.*,
   164 F.R.D. 400 (E.D. Pa. 1995).............................................................................31

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990)...................................................................................26

*Greater Chautauqua Fed. Credit Union v. Quattrone*,
   No. 1:22-cv-2753, 2025 WL 869729 (S.D.N.Y. Mar. 20, 2025)............................34

*In re J.P. Morgan Chase Cash Balance Litig.*,
   242 F.R.D. 265 (S.D.N.Y. 2007), *amended by* 255 F.R.D. 130 (S.D.N.Y. 2009)...................26

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) .............................................................................7

*In re Napster, Inc. Copyright Litig*,
   Nos. C MDL-00-1369, C 04-1671, 2005 WL 1287611 (N.D. Cal. June 1, 2005) ............12, 13

*In re Petrobras Secs.*,
   862 F.3d 250 (2d Cir. 2017)..................................................................................7, 9

iv

*Kihn v. Bill Graham Archives LLC*,
 No. 20-17397, 2022 WL 18935 (9th Cir. Jan. 3, 2022) .......................................................11, 22

*Levitt v. J.P. Morgan Secs., Inc.*,
 710 F.3d 454 (2d Cir. 2013) .....................................................................................................7

*Lindsey v. Normet*,
 405 U.S. 56 (1972) ...................................................................................................................30

*McCracken v. Best Buy Stores, L.P.*,
 248 F.R.D. 162 (S.D.N.Y. 2008) .............................................................................................16

*McGucken v. Shutterstock, Inc.*,
 166 F.4th 361 (2d Cir. 2026) ........................................................................................... *passim*

*McLaughlin v. Am. Tobacco Co.*,
 522 F.3d 215 (2d Cir. 2008) ....................................................................................................30

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005) .................................................................................................................20

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
 112 F.4th 144 (2d Cir. 2024) ...................................................................................................24

*Myers v. Hertz Corp.*,
 624 F.3d 537 (2d Cir. 2010) ......................................................................................................7

*Newton v. Merrill Lynch, Pierce, Fenner & Smith*,
 259 F.3d 154 (3d Cir. 2001) ....................................................................................................30

*Nguyen v. BDO Seidman, LLP*,
 No. SACV 07–01352, 2009 WL 7742532 (C.D. Cal. July 6, 2009) ......................................30

*Palmer Kane LLC v. Scholastic Corp.*,
 No. 11 Civ. 7456, 2012 WL 2952898 (S.D.N.Y. July 16, 2012) ...........................................11

*Premier Fabrics, Inc. v. Woodland Trading Inc.*,
 42 F. Supp. 3d 549 (S.D.N.Y. 2014) .......................................................................................20

*Pryce v. Progressive Corp.*,
 No. 19-CV-01467, 2022 WL 1085489 (E.D.N.Y. Feb. 17, 2022), *report and recommendation adopted as modified*, No. 19CV1467, 2022 WL 969740 (E.D.N.Y. Mar. 31, 2022) ..............35

*Radmanovich v. Combined Ins. Co. of Am.*,
 216 F.R.D. 424 (N.D. Ill. 2003) ..............................................................................................29

*Rapcinsky v. Skinnygirl Cocktails*,
 2013 WL 93636 (S.D.N.Y. 2013) ............................................................................................26

v

*Schneider v. YouTube, LLC*,
  674 F. Supp. 3d 704 (N.D. Cal. 2023) ................................................................ *passim*

*Seijas v. Republic of Argentina*,
  606 F.3d 53 (2d Cir. 2010)...........................................................................................28, 31

*Sheldon Abend Revocable Tr. v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010).......................................................................14

*State St. Glob. Advisors Tr. Co. v. Visbal*,
  431 F. Supp. 3d 322 (S.D.N.Y. 2020).......................................................................20

*Techniques, Inc. v. Rohn*,
  592 F. Supp. 1195 (S.D.N.Y. 1984)............................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)..................................................................................................16

*Vaccariello v. XM Satellite Radio, Inc.*,
  295 F.R.D. 62 (S.D.N.Y. 2013) ................................................................................35

*Viacom Int'l, Inc. v. YouTube, Inc*,
  676 F.3d 19 (2d Cir. 2012)..................................................................................15, 17

*Vulcan Golf, LLC v. Google Inc.*,
  254 F.R.D. 521 (N.D. Ill. 2008)...............................................................................12

*Waite v. UMG Recordings, Inc.*,
  No, 19-CV-01091, 2023 WL 1069690 (S.D.N.Y. Jan. 27, 2023) ....................................12, 34

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................. *passim*

*Wang v. Tesla, Inc.*,
  338 F.R.D. 428 (E.D.N.Y. 2021) ................................................................................7

*WB Music Corp. v. Rykodisc, Inc.*,
  No. CIV.A.94-2902, 1995 WL 631690 (E.D. Pa. Oct. 26, 1995)............................................11

*Wright v. Warner Books, Inc.*,
  953 F.2d 731 (2d Cir.1991)........................................................................................24

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .............................................................................29, 31

**Statutes**

17 U.S.C. § 106(1) .....................................................................................................32

vi

17 U.S.C. § 201(d) ................................................................................................................11

17 U.S.C. § 412 ....................................................................................................................18

17 U.S.C. § 504(b) ...............................................................................................................19

17 U.S.C. § 504(c)(1)............................................................................................................18

17 U.S.C. § 504(c)(2)............................................................................................................18

17 U.S.C. § 507.....................................................................................................................24

17 U.S.C. § 512(c) ............................................................................................................3, 22

17 U.S.C. § 512(c)(1)(C) ..................................................................................................16, 23

17 U.S.C. § 512(c)(3).........................................................................................................3, 16

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ...............................................................................................................7

Fed. R. Civ. P. 23(a)(2)..........................................................................................................10

Fed. R. Civ. P. 23(b)(2)..............................................................................................2, 4, 34, 35

Fed. R. Civ. P. 23(b)(3)...............................................................................................7, 10, 27

Fed. R. Civ. P. 23(b)(3)(A) .....................................................................................................28

Fed. R. Civ. P. 23(b)(3)(B) .....................................................................................................28

Fed. R. Civ. P. 23(b)(3)(C) .....................................................................................................28

Fed. R. Civ. P. 23(b)(3)(D) .................................................................................................28, 29

## PRELIMINARY STATEMENT

Plaintiff seeks to certify a sweeping class of copyright owners based on the premise that Shutterstock's decision to remove an image from its platform in response to a takedown request establishes the noticing party's copyright ownership, the posting party's infringement, and Shutterstock's liability for downstream uses as a matter of law. That premise is incorrect on all counts. The record shows that takedown requests vary widely in form and substance, that Shutterstock frequently removed images even when notices did not comply with the Digital Millenium Copyright Act ("DMCA"), and that it did so even when the requestor did not establish infringement. Plaintiff glosses over these and other distinguishing characteristics among putative class members in trying to shoehorn this case into the certification requirements of Federal Rule of Civil Procedure Rule 23. She asks the Court to treat nearly 19,000 works as if those various individualized questions do not exist.

Rule 23 does not permit that shortcut. Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," and a plaintiff seeking certification must affirmatively demonstrate compliance with Rule 23's "stringent" requirements through a "rigorous analysis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Plaintiff has not done so here.

At every stage, individualized questions would overwhelm any common issues here. Determining whether a putative class member belongs in the class would require examining each takedown request to determine whether it complied with the DMCA. Determining liability would require individualized inquiries into copyright ownership, licensing history, and whether infringement occurred at all. And determining damages would require work-specific analysis of copyright registration status, licensing arrangements, and alleged downstream uses.

1

These individualized inquiries are not peripheral; they are central to Plaintiff's theory of the case. Plaintiff attempts to avoid them by, for example, asserting that Shutterstock's decision to remove an image constitutes acceptance of a DMCA notice, thereby establishing infringement, and voids any prior license. But courts have repeatedly rejected that premise. A platform's response to a takedown request is not a judicial determination of copyright ownership or infringement, and it cannot substitute for the individualized proof those issues require. Because Plaintiff's claims turn on thousands of fact-intensive determinations about individual works, individual notices, individual ownership rights, and individual uses, the proposed class cannot satisfy Rule 23's requirements of ascertainability, commonality, predominance, typicality, or superiority. Nor can Plaintiff certify an injunctive class under Rule 23(b)(2), where the relief she seeks is overwhelmingly monetary and individualized.

For these reasons, and those explained below, Plaintiff's motion should be denied.

## FACTUAL BACKGROUND

### A.    Shutterstock

Shutterstock operates an online marketplace for photographs, video footage, music, and other digital content, containing over 424 million images and 26 million video clips, adding approximately 200,000 images and an average of 75,000 video clips to the marketplace each day. *McGucken v. Shutterstock, Inc.*, 166 F.4th 361, 367 (2d Cir. 2026). Shutterstock takes certain measures to ensure that it provides quality content, including content review and compliance with the DMCA's notice and takedown scheme. First, it performs a cursory review of every image before it appears on its platform to weed out images that contain "hallmarks of spamming," "visible watermarks," technical quality issues, or material like "pornography, hateful imagery, trademarks, copyrighted materials, [or] people's names and likenesses without a model release." *See id.* Once an image is available on the customer platform, it can be licensed

2

through any of Shutterstock's different licensing models. *Id.* Second, Shutterstock seeks to comply with the notice and takedown requirements of Section 512(c) of the DMCA (for "Information Residing on Systems or Networks At Direction of Users"), removing infringing user-uploaded content in response to customers' takedown requests.

### B.    Plaintiff

Plaintiff Cynthia Herrick is the alleged owner of the photographs at issue in this lawsuit (the "Photographs"): "Snowy Plover Baby's First Step" (the "Plover Photograph") and "Snowy Flowy Egret" (the "Egret Photograph"). Complaint ("Compl.") ¶¶ 18, 33, 49. Plaintiff alleges that the Photographs were added to Shutterstock without her knowledge or consent. Compl. ¶¶ 32-33, 49-50. Plaintiff sent a non-compliant DMCA notice[1] requesting takedown of the Plover Photograph, but Shutterstock took the photograph down anyway. *Id*. ¶¶ 34, 55; Dkt. 109-1 (R&O to RFA 3). Shutterstock later sent kill notices to its 12 downstream customer licensees for Herrick's Plover Photo. Dkt. 109-2 (Shimmin Tr. 202:13–20). Plaintiff never submitted a takedown request for the Egret Photograph, Declaration of Andrew Raff ¶ 9, but it was taken down when the contributor's account was terminated. *Id.*

Plaintiff does not allege that Shutterstock continued to display either Photograph after receiving notice of the alleged infringement, and concedes that Shutterstock "generally suspends additional unauthorized licensing of the copyrighted works upon receiving notification from a

---

[1] To be effective a notice must substantially comply with the requirements of Section 512(c)(3), including: (i) a physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right allegedly infringed; (ii) identification of the copyrighted work, or, if multiple copyrighted works, a representative list of such works; (iii) identification of the material claimed to be infringing and to be removed or access to which is to be disabled, and information reasonably sufficient to locate the material; (iv) contact information for the complaining party; (v) a statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and (vi) a statement that the information in the notification is accurate, and under penalty of perjury.

copyright owner of infringement." Compl. ¶ 7. She merely alleges that when Shutterstock

removed the Plover Photograph in response to her notice, it failed to terminate or void prior

licenses of the image to its customers. *Id*. ¶ 41.

### C.    Plaintiff's Proposed Class

Plaintiff originally sought to certify a class that included anyone "whose copyrighted

work was licensed by Shutterstock," "sent Shutterstock a notice to take down copyrighted

works," and "from which Shutterstock generated and retained licensing revenue from a

Shutterstock contributor who did not have authorization to exploit any class members'

copyrighted work…." Compl. ¶ 113.[2] Recognizing the overbreadth and unmanageability of that

originally identified class, Plaintiff now seeks to certify the following class:

> All owners of works registered with the United States Copyright
> Office who submitted a takedown notice to Shutterstock seeking
> removal of such works from Shutterstock's platform during the
> period April 17, 2020 through the present, and where at least one
> license was sold by Shutterstock for a work prior to the takedown
> notice.
>
> Excluded from the Class are Shutterstock, Inc., its officers,
> directors, and employees, and their immediate families, and any
> copyright owner who received payment from Shutterstock
> resolving claims for the Work at issue.

Mot. at 15. Plaintiff seeks damages and injunctive relief on behalf of the same class. Mot. at 16.

### D.    The Takedown Requests

During the period from April 17, 2020 through April 17, 2023 (the "Class Period"),[3]

---

[2] Plaintiff has seemingly abandoned her separate injunctive relief only class under Rule 23(b)(2)
of those "whose copyrighted work has been made available for distribution and display by
Shutterstock without a lawful license or the express authority of the copyright holder."
[3] Plaintiff's Motion refers to the Class Period as the period from April 17, 2020, through the
present and cites discovery responses purportedly providing information related to that same
period. Mot. at 15. But the discovery responses were limited to the period from April 17, 2020

Shutterstock received 4,647 takedown notices. Dkt. 109-8 (R&O to Rog. 6). These 4,647

requests varied greatly in form and substance, from those that fully comply with the DMCA's

requirements, to those that were noncompliant, or that asserted claims not covered by U.S.

copyright law. *Id.* The total number of works taken down in response to these requests that, prior

to removal, had been licensed to Shutterstock's customers, is 18,921. *Id.* (R&O to Rog. 8). The

total revenues Shutterstock accrued from images that are part of the putative class (and excluding

ones that have been reinstated) is ███████████ with accrued royalties of ███████████ Dkt. 109-8

(R&O to Rog. 9). The kinds of works at issue include photos, illustrations and vectors (simple

geometric graphics). *Id.*

The parties agreed in discovery that Shutterstock would produce records related to a

representative sample of the at-issue images comprised of 15 percent (15%) of the total,

randomly selected through an agreed upon procedure ("Sample Set"). Burns Decl. ¶ 5.

Shutterstock produced records related to approximately 1,800 images from 572 requests as part

of the Sample Set. *Id.* Like the broader set of all takedown requests in the class period, the

requests in the Sample Set varied widely. Most were missing critical parts of a valid DMCA

takedown. Burns. Decl. ¶ 16. Many lacked a signature or a statement made under penalty of

perjury. *Id.* ¶ 19 & Exs. 27-29. Some cited the copyright laws of other countries. *Id.* ¶ 8 & Ex. 3

at 2; Ex. 4 at 1; Ex. 5 at 1. Many did not include an address for the requestor. *Id.* ¶ 19. Many

failed to identify copyright registration numbers, and most did not attach copyright registrations.[4]

---

through the filing of the complaint, April 17, 2023, which was the originally defined Class
Period. For ease of reference, Shutterstock refers to the figures and Class Period set forth in the
parties' discovery responses.

[4] Plaintiff admits she was only able to obtain confirmation of copyright registration for 50% of
those absent putative class members she hand selected from the Sample Set, and only after
serving subpoenas on them. Mot. at 17.

*Id.* Some requestors acknowledged they were not the copyright owner and did not claim to be the owner's agent but still requested removal of an image from the platform. *Id.* ¶ 9 & Ex. 6 at 1.

In response to many of the requests, Shutterstock informed the requestor that their purported notice was deficient, but that Shutterstock had opted to take the image down anyway. *Id.* ¶¶ 16-17 & Exs. 21-26. Shutterstock witnesses confirmed at deposition that Shutterstock frequently took images down in response to invalid requests. Dkt. 109-2 (Shimmin Dep.) 40:16–22; 41:3–7 (confirming "Shutterstock's policy regarding DMCA notices is to honor them even if they're not 100 percent compliant with the law"). At times, Shutterstock sent kill notices to downstream licensees after receiving a takedown request. Dkt. 109-8 (R&O to ROGs) No. 15. At other times it did not. *Id.* However, its decisions whether to send kill notices are discretionary and necessarily dependent on the parties involved, what the content at issue is, what the uses of the work in question are, if any, and other case-specific information. Dkt. 109-3 (Raff Dep.) 183:21–184:13; Burns Decl. Ex. 37 (Raff Dep.) 183:21-190:9.

Shutterstock is able, through its records, to identify those who have licensed images from it. Dkt. 109-8 (R&O to ROGs) No. 17. These licensees are referred to as "Licensee Customers." *See* Burns Decl. Ex. 1 at p. 7 ¶ 20 (Herrick's First Set of RPFs (defining Licensee Customer)). However, Shutterstock does not have records reflecting how Licensee Customers use licensed images, or if they even use them at all. Raff Decl. ¶ 7.

## ARGUMENT

Plaintiff fails to show that this case is entitled to class treatment, which the Supreme Court has emphasized is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. at 33 (citation omitted). Rule 23's requirements are "stringent" and "exclude most claims." *Am. Express Co. v.*

6

*Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Plaintiff "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010). *See also Levitt v. J.P. Morgan Secs., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) ("The Rule 23 requirements must be established by at least a preponderance of the evidence.") (citation omitted). Plaintiff's broad and ill-defined proposed class fails each of the ascertainability, commonality, predominance, typicality and adequacy requirements under Rule 23(a) and Rule 23(b)(3). And Plaintiff's proposed injunctive relief class is inappropriate in an action primarily seeking monetary relief, does not properly seek relief directed at every member of the class, and fails because Plaintiff lacks standing.

## I.    PLAINTIFF CANNOT ESTABLISH THE STRINGENT REQUIREMENTS OF RULE 23 TO WARRANT CLASS CERTIFICATION

### A.    Plaintiff's Proposed Class Is Not Ascertainable.

Plaintiff has not met her burden of proving by a preponderance of the evidence that the putative class is readily ascertainable. To be ascertainable, a proposed class must be (1) "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member"; and (2) "defined by objective criteria," such that "identifying its members would not require a mini-hearing on the merits of each case." *In re Petrobras Secs.*, 862 F.3d 250, 260, 264 (2d Cir. 2017); *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 439 (E.D.N.Y. 2021) (class is ascertainable "when identifying its members would not require a mini-hearing on the merits of each case") (citation omitted). *See also In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 543 (S.D.N.Y. 2021) (class is not ascertainable where there is "a need for 'a mini-hearing on the merits of each case'"); *Appiah v. Home Depot U.S.A., Inc.*, No. 3:20-CV-00489, 2021 WL 5847150, at *5 (D. Conn. Dec. 9, 2021) (class definition that required "detailed inquiry" into each potential class member's factual circumstances "to determine the details" of

whether it came within class definition "is the very type of 'mini-hearing on the merits of each case' that the Second Circuit has cautioned against" and fails ascertainability requirement).

Plaintiff argues that "[t]he class definition employs three (3) objective, record-based criteria for membership: (1) the class member owns a work registered with the United States Copyright Office; (2) the class member submitted a DMCA takedown notice to Shutterstock during the Class Period; and (3) Shutterstock's records reflect that at least one license was sold for the Work prior to the takedown notice." Mot. at 13. Plaintiff's proposed class is not ascertainable, because the purported criteria are not objective and do not provide the Court with a sufficiently definite way of determining who is a member.

### 1. Whether Shutterstock Can Identify "Licensees" Is Irrelevant to Identifying Class Members.

First, Plaintiff confusingly argues that Shutterstock can identify class members from its own records because "Shutterstock maintained records sufficient to identify every licensee customer of every void-license work." Mot. at 8. *See also* Mot. at 16 (citing Ex. 109-8 ("R&O to Rogs")), No. 17 (Shutterstock "is generally able to identify a Licensee Customer who licensed a work that was later subject to a Takedown Notice" and can determine their contact information)). But "licensee customers" are not members of the class Plaintiff seeks to certify (the putative class members are copyright owners of the licensed works, not the licensees), and whether or not Shutterstock can identify them is irrelevant to the ascertainability question.

### 2. The Question of Copyright Ownership Is Not Objective.

Second, the question of who "owns a work registered with the United States Copyright Office," Mot. at 13, is far from objective. Shutterstock previously explained in its Motion to Strike Plaintiff's Class Allegations that it does not have records establishing who owns copyrights in third-party works submitted to it (or showing whether interests in those copyrights

8

have been transferred or litigated). ECF No. 28 at 15. The Court in response highlighted that this issue went to administrative feasibility of identifying class members, rather than the issue of ascertainability. Dkt. 33 at 18. But putting aside whether identifying copyright owners is administratively feasible, the ascertainability inquiry requires that the class be identified without requiring a host of mini-trials, *see In re Petrobras Sec.*, 862 F.3d at 256, something that is not possible here to establish ownership of the works identified in the DMCA notices.

Ownership of a copyright is a prerequisite to any copyright infringement claim. *Techniques, Inc. v. Rohn*, 592 F. Supp. 1195, 1197 (S.D.N.Y. 1984). Yet Plaintiff has identified no way to establish how one could determine ownership of the copyrights identified in takedown notices without conducting mini-trials into the issue for each class member. Ownership determinations can be complex due to lengthy chains of title, competing claims of ownership, multiple ownership, and the lack of any requirement that transfers be recorded with the Copyright Office. Indeed, discovery has shown that many of the takedown requests in the Sample Set do not contain a copyright registration or application number. Burns Decl. ¶ 19. And even if a copyright registration or application number could be located, there is still the question of whether interests in those copyrights have been transferred or are disputed. ECF No. 28 at 15. That problem is not theoretical: documents produced in discovery show there in fact are disputes over ownership of Sample Set works. For example, in one case, a user submitted a complaint arguing that an image was created as part of a competition, and the rights were assigned to them at the end of the contest. *See* Burns Decl. ¶ 11 & Ex. 8 at 2-3, Ex. 9. The only way to determine ownership of copyright in many instances would be to conduct a mini-trial on the merits for each class member to consider the issues of ownership. For these reasons, Plaintiff has failed to show the class is ascertainable.

**B.**    **Plaintiff Has Failed to Carry Her Burden of Showing Common Issues Predominate for the Putative Class.**

Plaintiff faces overwhelming issues with commonality and predominance here. First, Plaintiff does not carry her burden of establishing that there are "common answers" to the core issues of ownership and validity, infringement and remedies sufficient to satisfy the commonality requirement of Rule 23(a)(2). *Dukes*, 564 U.S. at 349-50. Plaintiff is also unable to satisfy the "even more demanding" predominance inquiry in Rule 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. at 33. Whether the predominance requirement is met depends on Plaintiff's ability to make a *prima facie* showing using the same evidence. *Dukes*, 564 U.S. at 349-50. Here, however, taking a "'close look' at whether common questions predominate over individual ones," it is clear that Plaintiff's claims will require individualized discovery and potentially thousands of mini-trials on copyright ownership and validity, infringement, and remedies, that bar certification. *Comcast*, 569 U.S at 33.

**1.**    **Issues of Ownership, Registration and Infringement Preclude Certification.**

*Ownership*. As shown above, *supra* I.A.2, the question of ownership of a copyright, a necessary predicate for any of Plaintiff's copyright infringement claims and for her class definition, is replete with issues of individualized proof, which predominate. Plaintiff suggests the Court can adjudicate the ownership of copyrights in thousands of works "through Copyright Office registration records." Mot. at 18, 23. But again, Shutterstock does not possess copyright registration records, Raff Decl. ¶ 6, and Plaintiff identifies no way to obtain those records for unidentified owners. Even if Shutterstock did possess records sufficient to identify copyright registrations, as highlighted above, copyright registrations are not "definitive" evidence of ownership of a valid copyright. *Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 819 (9th Cir.

2025). *See also WB Music Corp. v. Rykodisc, Inc.*, No. CIV.A.94-2902, 1995 WL 631690, at *6 (E.D. Pa. Oct. 26, 1995) (copyright validity is "particular to … one case and no other").

Copyright registrations are not typically vetted for accuracy and only reflect ownership at the time of registration, if they are accurate. They do not account for subsequent assignment, transfer, or license, something expressly permitted by the Copyright Act. *See* 17 U.S.C. § 201(d). And there is no database that contains accurate, up-to-date ownership information.[5] For this reason, courts have repeatedly recognized in the class action context that determining copyright ownership and licensing requires a "highly individualized" inquiry. *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 722 (N.D. Cal. 2023); *Palmer Kane LLC v. Scholastic Corp.*, No. 11 Civ. 7456, 2012 WL 2952898, at *7 (S.D.N.Y. July 16, 2012) ("Because in order to answer whether [defendant] in fact held a license to use those images will necessarily involve, and depend upon, inquiries into a multitude of individual relationships and interactions (between [defendant] and the rights owner; between [defendant] and the licensing agent; between the rights owner and the licensing agent), common questions of law or fact do not predominate over individual questions"); *Kihn v. Bill Graham Archives LLC*, No. 20-17397, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (unpublished) (reversing certification because "individual issues of license and consent would predominate for the absent class members, who have not yet had the opportunity Plaintiffs had to sift through their claims and exclude those that lack merit"); *Blackman v. Teespring, Inc.*, No. 19-cv-01494, 2019 WL 7832600, at *2 (N.D. Cal. July 12, 2019) ("Although each plaintiff will have to satisfy the same legal elements for copyright infringement

---

[5] *See, e.g.*, U.S. Copyright Office Circular 22, *How to Investigate the Copyright Status of a Work*, at 3 (Rev. June 2010) (registration records "may be incomplete or lacking entirely"), available at https://scireg.org/us_copyright_registration/circs/circ22.pdf.

11

as all other plaintiffs, each claim of infringement will have to be resolved upon facts which are particular to that single claim of infringement and separate from all the other claims"); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 528, 537 (N.D. Ill. 2008) ("[T]he possibility of hundreds if not thousands of individual hearings related to [registered trademarks] ownership" renders class certification improper, since "multiple time-consuming inquiries regarding ownership" will be necessary); *Waite v. UMG Recordings, Inc.*, No, 19-CV-01091, 2023 WL 1069690 at *6-7 (S.D.N.Y. Jan. 27, 2023) (denying certification in copyright infringement case because individualized work-made-for-hire and termination-notice issues defeated predominance).

Plaintiff cites *In re Napster, Inc. Copyright Litig*, Nos. C MDL-00-1369, C 04-1671, 2005 WL 1287611, at *3, 7 (N.D. Cal. June 1, 2005) and *David v. Showtime/Movie Channel, Inc.*, 697 F. Supp. 752, 757 (S.D.N.Y. 1988) for the proposition that "the fact that each class member's specific Work is different does not defeat predominance." Mot. at 24. Each is readily distinguishable. The dispute in *Showtime/Movie Channel, Inc.* centered on the expiration of a licensing agreement between ASCAP and SMC, with the core issue involving an either/or decision on the period of time royalties would have to be paid after expiration. 697 F. Supp. at 754-55. The case did not center on a web of licensees using works separately; a single programmer "determine[ed] how and when the works in this case were used", and there was no dispute over how ownership of each copyright could be shown, since the parties agreed they had previously been properly licensed. *Id*. at 759. Likewise, the class certified in *In re Napster* was limited to music-publisher principals who worked with a single "common licensing and collection agent." 2005 WL 1287611, at *5. The court specifically found that the active involvement of the agent would "reduce, if not eliminate, any complications that may arise from

adjudicating the individual aspects of the class members' claims." *Id.* at \*9. As the court in

*Schneider* noted in distinguishing *Napster*, such "streamlined circumstances" are a "far cry"

from a situation in which the court would be required to sort out ownership rights of unidentified

copyright owners itself. 674 F. Supp. 3d at 722.

  ***Infringement.*** The elements of direct copyright infringement are "(1) ownership of a

valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v.*

*CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020), quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv.*

*Co.*, 499 U.S. 340, 361(1991). To satisfy the second element, a plaintiff "must demonstrate that:

(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a

substantial similarity exists between the defendant's work and the protectible elements of

plaintiff's [work]." *Id.* (quoting *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir.

2001). "The substantial similarity prong entails a highly nuanced, detailed inquiry that is tailored

to the works at issue." *A&E Television Networks, LLC v. Big Fish Ent., LLC*, No. 22 CIV. 7411,

2023 WL 4053871, at \*6 (S.D.N.Y. June 16, 2023). It is for this reason, that courts have

acknowledged that "[t]he determination of the extent of similarity that will constitute a

substantial, and hence infringing, similarity presents one of the most difficult questions in

copyright law, and one that is the least susceptible of helpful generalizations." *Id.* (citing *Horizon*

*Comics Prods., Inc. v. Marvel Ent., LLC*, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017). But

Plaintiff has offered no credible methodology whatsoever for the Court to determine whether

infringement has in fact occurred, other than on an individualized basis.

  Regarding the alleged infringing uses identified by the takedown requests, the Court

would have to look to the specific, identified use to determine whether infringement in fact

occurred. The takedown notices show how fact dependent that inquiry will be. Some notices

13

allege infringement because an image is similar—but not identical—to the work identified in the notice. *E.g.*, Burns Decl. ¶¶ 12-13 & Exs. 10-19. This will, in turn, require the Court to conduct an individualized substantial similarity analysis for each to determine whether there was actual infringement. *See Sheldon Abend Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 203 (S.D.N.Y. 2010) ("To prove unlawful appropriation of protectible elements, a plaintiff must show that there is substantial similarity between protectible elements in the two disputed works").

Other notices claim copying based on inclusion of *elements* of the original image. *See* Burns Decl. Ex. 11 at 1 (requesting that an image be taken down but acknowledging that the allegedly infringing image has been "changed…quite a bit" from the alleged original); Exs. 16-19 (claiming the alleged infringing work incorporated an element of the requestor's work into a larger work with additional elements). Such claims call into question whether the alleged infringement meets the substantial similarity standard or is subject to *de minimis* or fair use defenses. The fair use defense, in particular is "highly fact-specific." *Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 11 (S.D.N.Y. 1992), *amended* (Oct. 26, 1992), *aff'd*, 37 F.3d 881 (2d Cir. 1994), *aff'd and order amended and superseded by* 60 F.3d 913 (2d Cir. 1994); *see* discussion below, at 24.

Plaintiff cites *Crysknife Cap. v. Liberty Specialty Mkts.*, No. 22 Civ. 7912, 2023 WL 3255777, at *15 (S.D.N.Y. May 3, 2023), for the novel proposition that Shutterstock is somehow directly liable for its customers' copyright infringement because it never received authorization from Plaintiff (or the putative class) to use their works, "accepted" their takedown notices and took down content based on those notices, and thus "[e]very unauthorized license issued by Shutterstock must be deemed void *ab initio*, and Shutterstock is liable for infringement each time

14

it allowed the continued use of a pirated Work under a Shutterstock-issued 'license' after knowing about infringement." Mot. at 12. As discussed below, that disregards the DMCA's safe harbor, which requires only that Shutterstock remove access to the images on its platform -- which Plaintiff acknowledges Shutterstock did. Mot. at 5 (citing Dkt. 109-1 (R&O to RFA) No. 3). Furthermore, *Crysknife* is not a copyright case at all and says nothing about whether a party is "liable for infringement each time it allowed the continued use of a pirated Work under a Shutterstock-issued 'license' after knowing about infringement." *Cf.* Mot. at 12. Indeed, as shown below, takedown notices, even if accepted, cannot be used as evidence of infringement, and cannot support Plaintiff's novel after-takedown direct infringement claim.

*Takedown Notices.* Plaintiff, attempting to avoid these individualized issues in her infringement claims, turns to a strategy already rejected by multiple courts. She repeatedly argues, without citation to any authority whatsoever, that Shutterstock's decision to take an image down in response to a request amounts to "acceptance of a DMCA notice" and "establish[es] as an undisputed fact that the contributor who uploaded the work lacked authority and that any license Shutterstock sold for that work was void from inception." Mot. at 8. *See also id.* at 12, 18, 19, 24 (similar). In fact, that is true neither in fact (Shutterstock repeatedly informed requestors that their notices were invalid but that it had decided to take the images down anyway) nor in law, *see Schneider*, 674 F. Supp. 3d at 720; *Viacom Int'l, Inc. v. YouTube, Inc,*, 676 F.3d 19, 27 (2d Cir. 2012).

To be effective, a DMCA takedown request must, among other things, be sent, in writing, to the service provider's designated agent, and must include "[a] physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed" as well as "a statement that the information in the notification is accurate, and under

penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." 17 U.S.C. § 512(c)(3).

But as the Motion acknowledges, Shutterstock routinely took images down where a notice did *not* comply with the DMCA. *E.g.*, Mot. at 8 (citing Shimmin Dep. at 40:16–22; 41:3–7 (confirming "Shutterstock's policy regarding DMCA notices is to honor them even if they're not 100 percent compliant with the law")). In fact, Shutterstock frequently told requestors explicitly that their notice was insufficient but that Shutterstock had decided to take the at-issue image down anyway. *See e.g.*, Burns Decl. Exs. 21-26. Documents produced in discovery show a wide range of deficiencies in notices that, nonetheless, resulted in a takedown. *Id.* ¶¶ 17-19. Therefore, for each of the 18,921 works at issue, the Court would have to (1) examine the relevant takedown request to determine whether it complied with the DMCA's requirements and (2) determine whether Shutterstock "acted expeditiously to remove" infringing material. 17 U.S.C. § 512(c)(1)(C). Frequently, these requests took the form of multiple emails between the requestor and Shutterstock, as Shutterstock sought to tease out which images the requestor had issue with. Burns Decl. ¶ 10 & Ex. 7. Because this requires individual class members "to present evidence that varies from member to member," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016), individual questions will predominate. *See, e.g., Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 66 (S.D.N.Y. 2013) ("[T]o make resolutions which advance the litigation will require the court to determine, for each copyrighted work claimed to have been infringed, whether a copyright holder gave notices containing sufficient information to permit the service provider to identify and locate the infringing material so that it could be taken down. That requires individualized evidence"); *McCracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162,

168 (S.D.N.Y. 2008) (individual issues predominate where claims depend on individual communications between defendant and plaintiffs).[6]

For this reason, the court in *Schneider*, 674 F. Supp. 3d 704, rejected the very theory Plaintiff advances it here. There, the plaintiffs argued that successful takedowns, together with YouTube's review process, established ownership of a copyright, infringement, and the absence of defenses. The court rejected that theory at class certification. Analyzing the DMCA's safe harbor provisions, it reasoned that the DMCA "does not contemplate that a takedown of content is a substantive determination of copyright ownership or infringement." *Id.* at 720. Instead, "[a]n adjudication of those questions is expressly reserved for the courts in a lawsuit filed by the copyright claimant, with the attendant judicial scrutiny of ownership and the objective similarities of specific expressive elements in the two works to determine infringement liability." *Id.* Thus, it concluded, "takedown of content in response to a DMCA notice is miles away from substantive proof of copyright ownership or infringement." 674 F. Supp. 3d at 719. Cf. *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 37 (2d Cir. 2012) (rejecting reading of DMCA offered by plaintiff that taking down content in response to DMCA notice amounts to "admitting the 'right and ability to control' the infringing material" as incompatible with the DMCA because otherwise "the safe harbor protection…would at the same time be a disqualifier."). Plaintiff, and the putative class, cannot use Shutterstock's acceptance of DMCA notices as a proxy for establishing the elements of their infringement case, which raise a host of individualized issues.

---

[6] Plaintiff's Complaint confirms as much. She pleads specific facts related to the nature and adequacy of the infringement notices she provided; Shutterstock's steps to obtain from Plaintiff any information needed to identify and address claimed infringing listings; Shutterstock's steps to respond to notices; and measures undertaken by Shutterstock outside the scope of the company's formal intellectual property protection system to respond to Plaintiff's complaints. *E.g.*, Compl. ¶¶ 33-36, 43-44, 48, 52-53.

17

*Damages*. Class certification also should be denied because damages cannot be established on a class-wide basis. *See Comcast*, 569 U.S. at 35 (At the certification stage, the predominance inquiry looks to whether "damages are susceptible of measurement across the entire class"). Plaintiff claims that "[c]lass members with timely registrations satisfying 17 U.S.C. § 412" can seek either statutory damages or actual damages, and class members without a timely registration can seek actual damages "measured by the fair market value of the license the copyright holder could have obtained, which if licensed through Shutterstock is precisely what Shutterstock charged its customers based on a license, fully documented in Shutterstock's Looker reporting system." Mot. at 24-25. Individualized issues pervade the determination of either type of damages. *Football Ass'n Premier League*, 297 F.R.D. at 68 (citing "the nature and amount of damages (depending at least in part on when the individual work's copyright was registered)" as among the issues making putative class action "no more than a diverse and unmanageable aggregation of individual claims").

With respect to statutory damages, each putative class member would have to show their copyright was registered before the alleged infringement, which would require showing when the copyright was registered; when the takedown was received relative to the registration; and when the purported post-takedown infringement occurred. Additionally, statutory damages can range from $200 to $150,000 per work. 17 U.S.C. §§ 504(c)(1)-(2). In determining the amount of an award in a particular case, "courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the

18

parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Each factor would require an individualized analysis of these various considerations.

With respect to actual damages, a successful claimant is entitled to both "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Plaintiff takes for granted that the amount Shutterstock received in licensing fees is an appropriate measure of actual damages. Mot. at 24-25. But it is not so simple: some of the Works in the putative class were licensed on an individual basis, but others were licensed as part of a package of works for a flat fee covering the entire package. Raff Decl. ¶ 10; *see also* Burns Decl. Ex. 2 (Zambrowksi Tr. at 199:13-21 (estimating 99% of the works at issue were licensed as part of packages rather than individually)). Similarly, calculating "profits of the infringer that are attributable to the infringement," 17 U.S.C. ¶ 504(b), would require teasing out the profits attributable to a specific image sold in a package. This also weighs against class certification.

Further, because Plaintiff contends that "each infringing act following an accepted takedown notice triggers a separate accrual for damages" (Mot. at 25), the Court will need to determine whether *post*-takedown infringement occurred. Plaintiff's purported common proof for this category of infringement is even thinner: she argues that "[w]hether each post-takedown notice use was infringing is answered by…Shutterstock's uniform practice of taking down Works from its own platform but not sending kill notices to its customers to stop them from infringement…." Mot. at 25. The fact that a license was sold does not mean that any particular image was ever actually used by the licensee, let alone that a separate infringement apart from appearing on Shutterstock's site to begin with actually occurred. Plaintiff has not sought records

19

from the licensees regarding use, and Shutterstock possesses none. Raff Decl. ¶ 7. Each of these uses would have to be scrutinized for all of the issues described above, and to ensure the use was not extraterritorial. *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 339 (S.D.N.Y. 2020) ("United States copyright laws do not apply extraterritorially").[7]

### 2.    Individualized Secondary-Liability Issues Preclude Certification.

Plaintiff's minimal attempt to allege secondary liability fails to address the entirety of the requirements of those claims and to address the individualized issues raised by them.

***Contributory Infringement.*** As an initial matter, it appears that Plaintiff has abandoned any attempt to allege contributory infringement, as she does not reference it in her Motion. This is appropriate in light of the Supreme Court's decision in *Cox v. Sony*, as Plaintiff has elicited no evidence, nor could she, that Shutterstock "induced its users' infringement," or that its service is "tailored to infringement." *Cox Commc'ns, Inc. v. Sony*, 146 S. Ct. 959, 966-69 (2026).

***Vicarious Infringement.*** Plaintiff's attempt to argue predominance for her vicarious infringement claim fails as well. First, vicarious copyright infringement requires "a gateway showing of direct infringement by a third party." *Schneider*, 674 F. Supp.3d at 719. Thus, all the individualized issues inherent in showing direct liability for Shutterstock (already discussed above) exist equally, or even more in the case of determining what those licensees did with their works after license. Vicarious infringement also requires individualized proof of a specific direct infringement and individualized proof that Shutterstock: (1) had but declined the right and ability to control the primary infringement, and (2) received a direct financial benefit. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). *See also*, *Premier Fabrics, Inc.*

---

[7] Most of Shutterstock's sales are from outside of the United States. Raff Decl. ¶ 11. U.S. customers accounted for 46%, 40% and 34% of total revenue for the years ended December 31, 2023, 2022 and 2021. *Id.* Ex. 38 at F-36.

*v. Woodland Trading Inc.*, 42 F. Supp. 3d 549, 555 (S.D.N.Y. 2014).

Plaintiff claims she can show right and ability to control licensees' usage by pointing to Shutterstock's license agreement terms, which permit Shutterstock to "supervise customers and send kill notices to them." Mot. at 21-22. But "[a] key component of vicarious liability is evidence that the defendant had the practical and technical ability to identify or screen out infringing material, but did not do so." *Schneider*, 674 F. Supp. 3d at 719. And a "failure to change operations to avoid distribution of infringing content" "is not the same as declining to exercise a right and ability" to stop direct infringement by others. *Id.* (quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) and *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007)). Merely sending a kill notice does not amount to a "practical and technical ability" to prevent infringement. *Cf. Schneider*, 674 F. Supp. 3d at 719. Shutterstock does not and could not monitor conduct by its licensees, and therefore lacks the "right and ability to control" such usage. Raff Decl. ¶ 7.

Plaintiff claims she can show direct financial interest by pointing to testimony that Shutterstock retained "up to 85% of all licensing revenue" from so-called "void licenses." Mot. at 23. As an initial matter, that figure misstates the numbers actually at issue for the class.[8] More importantly, and as described above, however, there is no way of knowing whether these funds actually resulted from any infringement in the first place. These figures represent situations where Shutterstock took down an image in response to a request—not where an adequate DMCA

---

[8] In discovery, the parties assumed a class period of April 17, 2020 to April 17, 2023. Dkt. 109-8 (R&O to Rogs) No. 7. For all of the images in that class (and excluding ones that have been reinstated), Shutterstock's total revenue is ███████ Subtracting the amount it paid out to contributors or that is set aside for contributors, the figure is ███████ (i.e., Shutterstock retained ██% of royalties). *Id.* (R&O to Rogs) No. 9.

21

takedown has been established or infringement has been adjudicated.

### 3.    Shutterstock's Defenses Also Require Individualized Determination.

"Every copyright claim is also subject to defenses that require their own individualized inquiries." *Schneider*, 674 F. Supp. 3d at 717 (citing *Kihn v. Bill Graham Archives LLC*, No. 20-17397, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (unpublished) (reversing certification of a copyright class action because "individual issues of license and consent would predominate for the absent class members, who have not yet had the opportunity Plaintiffs had to sift through their claims and exclude those that lack merit"). Here, individual defenses like the DMCA safe harbor, fair use, and time-bars all require individualized proof.

***DMCA safe harbor*.** The Motion erroneously claims that, under the Second Circuit's recent decision in *McGucken v. Shutterstock, Inc.*, 166 F.4th 361 (2d Cir. 2026), "DMCA safe harbor immunity is unavailable to Shutterstock for conduct on its platform, which also logically means it is not immune for post-DMCA takedown conduct off the platform. " Mot. at 7–8. *See also id.* at 26 (erroneously arguing that *McGucken* established that "Shutterstock is not a passive platform — it actively and directly licenses and distributes works to its customers"). In fact, *McGucken* further confirms that Plaintiff cannot show commonality or predominance.

The Second Circuit found that Shutterstock satisfied certain criteria of the § 512(c) safe harbor, but found triable facts and accordingly remanded as to two of its requirements, "whether Shutterstock's storage of McGucken's photographs was 'at the direction of a user' and whether Shutterstock 'has the right and ability to control' the infringing activity at issue here." 166 F.4th at 373-74. The Second Circuit did not determine that Shutterstock could not make those showings; just that they were factual issues that needed further development in the District Court. Since the Second Circuit issued its decision, the District Court has ordered the parties to

22

submit additional summary judgment briefing on the two final requirements, which the parties have filed. *See McGucken v. Shutterstock, Inc.*, Southern District of New York Case No. 1:22-cv-00905-JHR, Dkt. 167. None of that means, as Plaintiff erroneously claims, that Shutterstock is ineligible for DMCA protection as a matter of law. *Cf.* Mot. at 8, 27. Instead, it just emphasizes how fact-dependent the issues in this case are, and therefore how unsuited to class treatment. *E.g., Football Ass'n Premier League*, 297 F.R.D. at 65 ("[C]opyright claims are poor candidates for class-action treatment," because of the highly individualized legal and factual inquiries they entail).

Plaintiff also argues that, once Shutterstock took an image down in response to a request, it was legally required to send kill notices to customers who had licensed that image and provide the requestor with any licensing fees it received in connection with the image. *E.g.*, Mot. at 3. The Motion cites no authority whatsoever for its argument that Shutterstock was required to pay requestors restitution, and Shutterstock is aware of no such finding in any case in the substantial body of law interpreting platform liability and DMCA issues. *Cf. Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 431 (2d Cir. 2012) ("the Copyright Act does not provide an express right for the copyright owner to receive payment for the use of a work"). With respect to the kill notice argument, the plaintiff in *McGucken* made the very same argument: he claimed that "because third-party licensees continued to use his images" after Shutterstock took them down, Shutterstock had not complied with its obligation under 17 U.S.C. § 512(c)(1)(C) to "respond[ ] expeditiously to remove, or disable access to" infringing material. *McGucken*, 166 F.4th at 374 & n. 9. The Second Circuit expressly rejected that argument, finding that "all that Shutterstock was required to do under the plain text of § 512(c)(1)(C) was

23

'remove' or 'disable access' to the images on its platform." *Id.* at n. 9. Here, Plaintiff's Motion assumes Shutterstock did just that.

*Statute of Limitations.* Plaintiff implicitly acknowledges through her class definition that a three-year statute of limitations applies to her and the class claims. *See* Mot. at 15; 17 U.S.C. § 507. However, copyright claims accrue "when a diligent plaintiff discovers or should have discovered the injury (e.g., an infringement)." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024). Every class member's claim thus requires individualized determinations of when an allegedly infringing work was posted and when the copyright owner discovered or should have discovered it.

*Fair Use.* Plaintiff also does not address the "highly fact-specific" fair use defense. *Am. Geophysical Union*, 802 F. Supp. at 11, *amended* (Oct. 26, 1992), *aff'd*, 37 F.3d 881 (2d Cir. 1994*), aff'd and order amended and superseded by* 60 F.3d 913 (2d Cir. 1994). It must be decided separately for each allegedly infringing work displayed on Shutterstock's site, with individualized determinations on the purpose and character of the use in question, the nature of the work, the amount and substantiality of the portion used and the impact of the use on the relevant market(s). The analysis must be "tailored to the particular facts of each case" (*Wright v. Warner Books, Inc.*, 953 F.2d 731, 740 (2d Cir.1991)) and "always 'calls for case-by-case analysis,'" *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)) which is uniquely ill-suited for class treatment. *See Football Ass'n Premier League*, 297 F.R.D. at 66-67.

### 4. Plaintiff's Commonality Arguments Confirm She Cannot Show Commonality Or Predominance.

The issues Plaintiff identifies as purported commonality among class members actually show the opposite. Mot. at 20-23.

24

*First*, Plaintiff highlights that Shutterstock has "no written or standard policy" for whether to provide payment to alleged rightsholders (Dkt. 109-8 (R&O to Rogs) No. 22) and weighs multiple factors when deciding whether to do so and whether to send kill notices. Dkt. 109-8 (R&O to Rogs) Nos. 17, 22). That shows that Shutterstock treated these decisions as discretionary, with reference to the individual circumstances of each situation.

*Second*, Plaintiff simply identifies common *questions*:

> (1) Whether Shutterstock's acceptance and processing of a valid DMCA takedown notice established that any previously-issued license for the affected Work was void from inception; (2) Whether Shutterstock had both the contractual authority and the operational capacity (the "right and ability" element of vicarious liability) to supervise and send kill notices to all its downstream customer licensees of void-license Works following receipt of a valid takedown notice; (3) Whether Shutterstock's decision to not send "kill notices" systematically—for 98% of affected Works— constitutes copyright infringement of each class member's exclusive rights in the Works; (4) Whether Shutterstock retained licensing revenue (the direct financial benefit element of vicarious liability) that should be paid to copyright owners of the Works; and (5) Whether damages are calculable on a classwide basis from Shutterstock's own records.

Mot. at 17-18. *See also* Mot. at 22-25. But "[w]hat matters to class certification . . . is not the raising of common 'questions'— even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. Plaintiff fails to state how a class action could lead to common answers. It could not.

### C.    Plaintiff Cannot Establish Typicality or Adequacy

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). "It is often said of typicality in class actions

that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Rapcinsky v. Skinnygirl Cocktails*, No. 11 Civ. 6546 (JPO), 2013 WL 93636, at *6 (S.D.N.Y. Jan. 9, 2013).

Where an analysis of a plaintiff's claims "would require numerous fact-specific individualized inquiries" typicality is not met and class resolution is inappropriate. *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 273–74 (S.D.N.Y. 2007), *amended by* 255 F.R.D. 130 (S.D.N.Y. 2009). A proposed class representative subject to unique defenses fails to satisfy the typicality and adequacy requirements if she may lose for reasons that would not apply to the class as a whole. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation. . . . [r]egardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation . . . .").

Plaintiff has not established typicality or adequacy for any of her claims. As an initial matter, Plaintiff's theory of vicarious liability fails as to her own claims, because Shutterstock *did* send kill notices as to her works. *See* supra, Section B.[9] Her own circumstances also will require "numerous fact-specific individualized inquiries." *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 273-74 (S.D.N.Y. 2007). For example, Plaintiff settled with one of the alleged licensees, making her damages calculations different than other members of the class. Burns Decl. Ex. 36 (Herrick Tr. at 113:22-24).

Plaintiff is also atypical in that she has contributed a photograph to National Geographic

---

[9] Plaintiff's claim that "Shutterstock did not send any 'kill notice' or other communication to the licensees of my Plover Photo directing them to stop infringing the work" (Herrick Dec. ¶ 17) is false. As Plaintiff's Motion acknowledges, Shutterstock *did* send kill notices to licensees of the Plover Photo. *See* Mot. at 5.

26

and has displayed her photographs in galleries. *Id.* (Herrick Tr. at 21:13-22, 41:5-15). Her licensing history, and theoretical ability to prove actual damages, is therefore also different than the average class member. Plaintiff's claims fail on typicality and adequacy grounds. *Est. of Berlin v. Stash Records, Inc.*, No. 95 Civ. 6575, 1996 WL 374176, at *2 (S.D.N.Y. July 2, 1996) (denying class certification in copyright infringement action because conduct by which named plaintiff was injured was "special and unique," and plaintiff was not injured by the same course of conduct as the absent class members; "Each class member would have to provide independent proof, relevant only to its claim, of what activities defendants engaged in which violated its particular copyright.").

### D. A Class Action is Not Superior to Other Methods of Resolving This Conflict.

#### 1. None Of The Factors Weigh In Favor Of Superiority.

Plaintiff also has not carried her burden of showing a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, Rule 23 counsel courts to consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). Shutterstock agrees with Plaintiff that the second factor is neutral, because Shutterstock is "unaware of any significant number of other cases concerning this controversy already begun by or against any class members." Mot. at 27. All of the other factors show class treatment is not a superior method here.

Plaintiff argues that the first factor is neutral, because "there is no evidence that class members are desirous of individually controlling their own actions." Mot. at 26. In fact, some

27

putative members of the class have indicated they are already litigating claims against downstream licensees. *E.g.*, Burns Decl. ¶ 18 & Ex. 26 at 5. Furthermore, because the putative class consists of those who "submitted a takedown notice to Shutterstock seeking removal of such works from Shutterstock's platform," Mot. at 15, it necessarily consists of would-be class members who are aware of the existence of a potential dispute with Shutterstock but nonetheless have chosen not to sue. Raff Decl. ¶ 8. There is also evidence in the record of individuals who sent takedown requests, specifically asked whether they would be compensated, were informed that they would not, and still have chosen not to sue. Burns Decl. ¶ 21.

With respect to the third factor, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," Plaintiff in conclusory fashion argues that "concentration in this Court—which has managed this action since its filing in April 2023—is clearly desirable." Mot. at 27. Other than this unsupported assertion, Plaintiff has made no effort whatsoever to show that any of the putative class members reside in this District or have any connection to it whatsoever, or any other reason this is the ideal forum. To the contrary, Shutterstock's limited information about the residence of would-be class members indicates the many in the Sample Set reside outside the United States. Burns Decl. ¶ 20. Plaintiff's proposed class definition does nothing to exclude those claimants, because it is not limited to U.S. residents, and provides no explanation for why trying the claims of foreign citizens – whose claims may be subject to the laws of other jurisdictions – in this District is superior.

Rule 23 also counsels courts to consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("[W]hether the court is likely to face difficulties managing a class action bears on whether the proposed class satisfies the predominance and superiority requirements."). Because,

28

as discussed above, individual issues predominate, a class action is not superior to individual actions. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (superiority element closely linked to predominance). Determining each putative class member's right to recovery—as well as any subsequent assessment of damages—would require mini-trials on multiple fact-bound issues specific to each work, such that there is "no particular desirability of concentrating the litigation in a single forum" and "significant drawbacks." *Football Ass'n Premier League*, 297 F.R.D. at 67; *see also id.* at 68 (citing "the nature and amount of damages (depending at least in part on when the individual work's copyright was registered)" as among issues making class action "no more than a diverse and unmanageable aggregation of individual claims"). *See also Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 439 (N.D. Ill. 2003) ("[B]ecause of the individual nature of the claims at issue in this case, the court finds no particular advantage to concentrating the litigation of all those claims in any one place.").

Plaintiff's argument to the contrary on this point is a non-starter. She claims that "[a]ll class members can be easily identified and notice provided from Shutterstock's own records; Shutterstock admits it can identify its customer licensees and class members' contact information from Shutterstock's records." Mot. at 27 (citing Dkt. 109-8 (R&O to Rogs) No. 17; Dkt. 109-3 (Raff Dep.) 57:3– 58:6; Dkt. 109-2 (Shimmin Dep.) 115:5–7). Once again, this confuses Shutterstock's ability to identify licensees (i.e., those who contracted to use putative class members' works) with its ability to identify the class members themselves. *See* section I.A.1, *infra*. The "evidence" Plaintiff cites for this proposition confirms this: it consists of deposition testimony explaining that Shutterstock can identify *licensees* of works removed in response to a takedown request (Dkt. 109-2  (Shimmin Dep.) 115:5–7, Dkt. 109-8 (R&O to Rogs) No. 17), i.e., those who licensed the putative class member works, not the putative class members themselves.

29

The testimony also explains that the "class" data identified was done so based solely on Shutterstock's decision to take an image down, "without regard to an evaluation of whether the underlying claim was in fact a copyright claim, whether there was a question of substantial similarity, copyrightability of the work or other issues." (Dkt. 109-3 (Raff Dep. 57:3-58:6)).[10]

For related reasons, a class action in this case is additionally not superior to other methods because it would it violate Shutterstock's due process rights. "Due process requires that there be an opportunity to present every available defense.'" *Lindsey v. Normet*, 405 U.S. 56, 67 (1972) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)); *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008) (eliminating "the right of defendants to challenge the allegations of individual plaintiffs . . . result[s] in a due process violation"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 191–92 (3d Cir. 2001). Any shortcut that would bypass Shutterstock's right to show that specific takedown requests were inadequate under the DMCA, that no infringement in fact occurred, or that any award of actual damages was incommensurate with actual harm, would violate Shutterstock's Due Process rights. The Due Process Clause ensures defendants an opportunity to challenge plaintiff's allegations, and Rule 23 cannot be used to trample that right. *See Dukes*, 564 U.S. at 366 (citing 28 U.S.C. § 2072(b)).

Plaintiff's argument that a class action is superior here because it "would be economically irrational for class members to incur the expense of bringing their own case against a well-funded defendant with substantial resources, especially considering the comparatively modest individual amounts at issue," Mot. at 26, has been repeatedly rejected by courts in circumstances like these, where statutory damages are available. *See Nguyen v. BDO Seidman,*

---

[10] And as highlighted numerous times already above, even where Shutterstock has contact information from the requestor, it may be impossible to identify actual copyright owners.

*LLP*, No. SACV 07–01352, 2009 WL 7742532, at *8 (C.D. Cal. July 6, 2009) (citing *Zinser*, 253 F.3d at 1190). [11] As the Fifth Circuit held in *Castano v. American Tobacco Co.*, 84 F.3d 734, 747 (5th Cir. 1996), where significant incentives for individual litigation exist but few litigants have actually filed suit, the notion that class litigation is necessary to preserve judicial resources is "only theoretical" and does not support class certification. *See also Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 405 (E.D. Pa. 1995) (concluding that class action treatment of claims under the Telephone Consumer Protection Act would be "inconsistent" with congressional intent in authorizing statutory damages for violations of the Act).

### 2.    *Bartz v. Anthropic* Proves Class Treatment Is Not Superior Here.

Plaintiff leans heavily on *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1064 (N.D. Cal. 2025), for the proposition that class treatment is appropriate because "[a] denial of a motion to certify the class would amount to a concession that copyright owners' credible allegations of infringement will go unchecked by courts so long as a copyist allegedly violates the Copyright Act not a little but a whole lot." Mot. at 27 (quoting *Bartz*, 791 F. Supp. 3d at 1064). *Bartz* is a recent out-of-circuit case certifying a limited class action. It is the exception that proves the rule that copyright cases, including this one, are inappropriate for class treatment.

*Bartz* involved Anthropic's decision to download millions of books from three pirate libraries for use in training its AI software. In doing so, "Anthropic obtained . . . metadata corresponding to [each] book," including ISBN numbers for some and Amazon Standard Identification Numbers for others. "An *ISBN* is an Industry Standard Book Number for published books issued by a private organization since 1970. It can be included on copyright registrations.

---

[11] *Seijas*, 606 F.3d at 58, which Plaintiff cites, is not to the contrary, because in that case, statutory damages were not available.

Each ISBN is a string of numbers — having substrings defined to flag each book's language, region, publisher, and unique title (at the edition level)." *Id.* at 1047. "Similarly, an *ASIN*, or Amazon Standard Identification Number, is issued by the online retailer to identify any item sold there, including ebooks or self-published books." *Id.* The ISBN numbers were "used to find certificates of copyright registration, and thereby to identify relevant plaintiffs as at least beneficial owners of the exclusive right to copy books at issue." *Id*. at 1048.

The Court ultimately certified one class and rejected two others. The class it certified was for "actual or beneficial owners of timely registered copyrights in ISBN/ASIN-bearing books downloaded by Anthropic" from two of the pirate libraries. *Bartz*, 791 F. Supp. 3d at 1051. The classes were "further limited to actual or beneficial owners of the copyright interest under Section 106(1), *i.e.*, the right to make reproductions" since that was consistent across the classes, since all were downloaded. The court put the burden on plaintiff to produce a list of each work that would be part of the class, "with a table having columns for title, author, publisher, copyright registration number, copyright-registered author (frequently the author), copyright-registered claimant (frequently the author or author's loan-out), and ISBN and/or ASIN" and limited the class to "the books on the list for which there is complete information." *Id.* at 1055–56 (footnote omitted). Anthropic's own expert calculated an error rate of less than 1% in the metadata for one of the libraries. *Id.* at 1055.

The court denied certification to two other classes, in large part because it would not be possible to determine which books should be part of the classes, because the books in those classes "came with fewer fields of metadata, less routinely complete files of content, and as a result the identification of titles and authors would be too problematic." The court found that the burden of identifying the books in those libraries fell to the plaintiff, and because they had not

32

done so, declined to certify a class. *Id.*

Thus, *Bartz* certified a closed, objectively identifiable piracy subclass of only those books with ISBN or ASIN numbers, which "Anthropic's own records indicate ISBNs and ASINs are typically unique to each book at the edition level, and so reliably can be linked to a copyright." Also unlike here, there the class definition was limited to works registered within five years of first publication, these certificates and the facts therein are presumed valid." *Id.* at 1059 (citing 17 U.S.C. § 410(c)). In contrast to such stringent and objective proof, this case turns on individualized inquiries *Bartz* did not attempt to control for: takedown sufficiency, licensing history, whether a downstream use in fact occurred and the nature of that use, kill-notice decisions, and damages for different works and different rightsholders. Plaintiff has not, as the *Bartz* court required, provided an effective way of settling ownership, authorization, registration validity, whether any license was void *ab initio*, whether downstream use continued, or whether Shutterstock is liable for downstream customer conduct.[12] These individualized inquiries distinguish this case from *Bartz*.

## II.    PLAINTIFF CANNOT SATISFY RULE 23(B)(2)

Plaintiff has also failed to prove she is entitled to certification of a class under Rule 23(b)(2) for her ill-defined injunctive relief. Plaintiff seeks injunctive relief requiring Shutterstock to send kill notices to all customers for Works subject to takedown notices. Mot. at 16. But such injunctive relief is only appropriate where the monetary relief Plaintiff seeks "is not incidental to the injunctive or declaratory relief" sought. *Dukes*, 564 U.S. at 360; *Finch v. N.Y. State Off. of Child. & Fam. Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008) ("Rule 23(b)(2) does

---

[12] *Herrick* is also not a *Napster*-style piracy case. It is a contributor-platform licensing and takedown case.

not provide for monetary or individualized relief"). Plaintiff's allegations establish that Plaintiff's primary goal is to pursue "money damages on behalf of herself and a class," (Dkt. 1 ¶ 3), focusing on Shutterstock's alleged "retention" of "ill-gotten licensing fees" (*Id.* ¶ 7;*see also id.* ¶¶ 40, 47, 50, 54, 107 (similar)). "If anything, it appears . . . Plaintiff[s'] claim for injunctive relief is incidental to [their] claim for damages*." Diacakis v. Comcast Corp.*, No. C 11–3002, 2013 WL 1878921, at *29-30 (N.D. Cal. May 3, 2013) (denying class certification under Rule 23(b)(2) where, inter alia, case management statement focused on monetary relief).

Further, an injunctive class is available only if "that relief is proper for each and every member of" the proposed class. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020). An injunction requiring kill notices in response to every takedown request would not differentiate between putative class members who sent noncompliant takedown requests and those who sent compliant ones, or those who had meritorious claims and those who did not. *See supra* []. *See also Waite v. UMG Recordings Inc.*, No. 19-CV-01091, 2023 WL 1069690, at *9 (S.D.N.Y. Jan. 27, 2023) (Rule 23(b)(2) requires plaintiffs to show "that adjudication of the case will not devolve into consideration of myriad individual issues."), *appeal dismissed,* No. 23-195 (2d Cir. Mar. 31, 2023). Nor would it differentiate between putative class members for whom a kill notice already has been sent and those where it has not, illustrating the difficulties in showing irreparable harm on behalf of the class. *See* Mot. at 15 (class definition failing to differentiate based on whether a kill notice has already been sent); Dkt. 109-8 (R&O to Rogs) No. 15 (kill notices sent to some works included in the class); Dkt. 109-2 (Shimmin Dep.) 90:17–24; 133:13–14; Dkt. 109-3 (Raff Dep.) 175:1–2; 182:7–8; 183:21–184:13. *See also Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 1:22-cv-2753, 2025 WL 869729, at *11 (S.D.N.Y. Mar. 20, 2025) (denying certification under 23(b)(2) because "[d]etermining whether the declaratory

34

and/or injunctive relief sought is actually appropriate for the entire putative class would inevitably devolve into an improper considerations of numerous individual issues").

Finally, Plaintiff lacks standing to seek an injunction because Shutterstock has already sent kill notices related to her works. Mot. at 5 (acknowledging Shutterstock sent kill notices related to the Plover Photo) (citing Dkt. 109-3 (Raff Dep.) 153:19–154:14.). A plaintiff must prove "a real and immediate threat that he would again" suffer injury to have standing for prospective equitable relief. *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983). When a plaintiff no longer is subjected to the challenged practice, courts refuse to certify a Rule 23(b)(2) class. *E.g.*, *Pryce v. Progressive Corp.*, No. 19-CV-01467, 2022 WL 1085489, at *7 (E.D.N.Y. Feb. 17, 2022) (plaintiff lacks standing for 23(b)(2) class where she fails to show she "is subject to ongoing harm"), *report and recommendation adopted as modified*, No. 19CV1467, 2022 WL 969740 (E.D.N.Y. Mar. 31, 2022); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 72 (S.D.N.Y. 2013) ("in actions for injunctive relief past injuries cannot satisfy the injury-in-fact requirement" for standing; injunctive relief barred where named plaintiff lacked standing).

## CONCLUSION

This case illustrates perfectly why courts have concluded that "copyright claims are poor candidates for class-action treatment." *Schneider*, 674 F. Supp. 3d at 717 (citation omitted). Plaintiff's claims turn on thousands of fact-intensive determinations about individual works, notices, ownership rights, and uses, meaning the proposed class cannot satisfy Rule 23's requirements of ascertainability, commonality, predominance, typicality, or superiority. The Court should deny the motion for class certification.

Dated: May 29, 2026

           Respectfully submitted,

           DAVIS WRIGHT TREMAINE LLP

           By: */s/ Sean Sullivan*

           James Rosenfeld
           Hilary Oran
           1251 Avenue of the Americas, 42nd  Floor
           New York, New York 10020
           Phone: (212) 489-8230
           Fax:    (212) 489-8340
           jamesrosenfeld@dwt.com
           hilaryoran@dwt.com

           Sean Sullivan (admitted *pro hac vice*)
           Sarah E. Burns (admitted *pro hac vice*)
           865 S Figueroa Street, Suite 2400
           Los Angeles, CA 90017
           Phone: (213) 633-8644
           Fax:  (213) 633-6899
           seansullivan@dwt.com
           saraburns@dwt.com

           Attorneys for Defendant Shutterstock, Inc.
           *Attorneys for Shutterstock, Inc.*